IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ESTEBAN ALFARO-HUITRON; § | |
| ELEAZAR GARCIA-MATA; § | |
| JOSE ANTONIO GARCIA-MATA; § | |
| JUAN GUZMAN; JOSE GERARDO § | |
| JASSO; RAUL JASSO-CERDA; § | |
| ENRIQUE ROJAS-TORRES; LAZARO § | |
| ROJAS-TORRES; TRINIDAD § | |
| SANTOYO-GARCIA; PEDRO TAMEZ; § | |
| SANTOS TREJO; ANGELA TREJO; § | |
| EFRAIN TREJO; YANETH TREJO; and § | |
| ISMAEL MARTINEZ-GONZALEZ, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | EP-14-CV-00159-FM |
| § | |
| WKI OUTSOURCING SOLUTIONS, § | |
| LLC; JAIME CAMPOS; RJF FARMS, § | |
| INC.; CERVANTES ENTERPRISES, § | |
| INC.; TIERRA DE DIOS FARMS, LLC; § | |
| SKYLINE PRODUCE, LLC; and LACK § | |
| FARMS, INC., § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

On this day, the court considered Defendant Cervantes Enterprises, Inc.'s ("Cervantes") "Motion to Dismiss Defendant Cervantes Enterprises, Inc. for Lack of Personal Jurisdiction" ("Cervantes's Motion") [ECF No. 16], filed June 6, 2014; "Defendant RJF Farms, Inc.'s 12(b)(2) and 12(b)(3) Motion to Dismiss" ("RJF's Motion") [ECF No. 18], filed June 9, 2014 by Defendant RJF Farms, Inc. ("RJF"); "Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue" ("Plaintiffs' Response to Cervantes & RJF") [ECF No. 34], filed June 30, 2014; "Defendant RJF Farm, [sic] Inc.'s Reply in Support of Its Motion to Dismiss" ("RJF's Reply") [ECF No. 36], filed July 10, 2014; "Defendant Lack Farm, [sic] Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction" ("Lack's Motion") [ECF No. 56], filed June 16, 2014 by Defendant Lack Farms, Inc. ("Lack"); "Memorandum in Support of Defendant Lack Farms, Inc.'s Motion to Dismiss for Lack of

Personal Jurisdiction" ("Lack's Memorandum") [ECF No. 57], filed June 16, 2014; "Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue" ("Plaintiffs' Response to Lack") [ECF No. 60], filed June 30, 2014; "Defendant Lack Farms, Inc.'s Reply in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue" ("Lack's Reply") [ECF No. 61], filed July 18, 2014; "Defendant Skyline Produce, LLC's 12(b)(2) Motion to Dismiss" ("Skyline's Motion") [ECF No. 62], filed September 5, 2014 by Defendant Skyline Produce, LLC ("Skyline"); "Response in Opposition to the Motion to Dismiss for Want of Personal Jurisdiction Filed by Skyline Produce, LLC" ("Plaintiffs' Response to Skyline") [ECF No. 63], filed September 19, 2014; "Plaintiffs' Supplemental Response in Opposition to Defendants' Motions to Dismiss for Lack of Personal Jurisdiction" ("Plaintiffs' Supplemental Brief") [ECF No. 88], filed February 2, 2015; and "Defendant Lack Farms' Supplement in Support of Its Motion to Dismiss for Lack of Jurisidiction [sic] [Doc. 16]" ("Lack's Supplemental Response") [ECF No. 91], filed February 13, 2015.[1]

## I.   BACKGROUND

   *A.   Procedural Background*

Cervantes, RJF, Lack, and Skyline (collectively, "Defendants") are farming companies which are registered in New Mexico and operate exclusively in New Mexico.[2]  Co-Defendant Jaime Campos ("Campos") is the founder of co-Defendant WKI Outsourcing Solutions, LLC ("WKI").[3]  Campos formed WKI to recruit U.S. and Mexican laborers to farms in southern New Mexico by using the federal

---

[1] Cervantes and RJF have been sued by Plaintiffs Esteban Alfaro-Huitron, Eleazar Garcia-Mata, Jose Antonio Garcia-Mata, Juan Guzman, Jose Gerardo Jasso, Raul Jasso-Cerda, Enrique Rojas Torres, Trinidad Santoyo-Garcia, and Pedro Tamez.  "Plaintiffs' Original Complaint" ("Cervantes–RJF Complaint"), ECF No. 1, filed Apr. 30, 2014.  Lack and Skyline have been sued by Plaintiffs Santos Trejo, Angela Trejo, Efrain Trejo, Yaneth Trejo, Ismael Martinez Gonzalez, Juan Guzman, Eleazar Garcia-Mata, and Esteban Alfaro-Huitron.  "Plaintiffs' Original Complaint" ("Lack–Skyline Complaint"), ECF No. 54, filed Apr. 30, 2014.  For simplicity, this order will refer to "Plaintiffs," collectively.

[2] Cervantes's Mot. 2 ¶ 2; RJF's Mot. 1; Lack's Mem. 1; Skyline's Mot. 2.

[3] Cervantes–RJF Compl. 3 ¶ 4.3.

H-2A visa program ("H-2A Program," or "Program").[4]

The H-2A Program permits the U.S. Department of Labor to issue visas to foreign citizens for temporary agricultural work. In order to be issued visas, an employer must first show "there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the [requested] labor or services."[5] This requirement cannot be met if the Secretary of Labor "determines that the employer has not made positive recruitment efforts within a multi-state region of traditional or expected labor supply where the Secretary finds that there are a significant number of qualified United States workers . . . available for work at the time and place needed."[6]

Between September 2011 and March 2012, Campos met separately with representatives of Defendants.[7] As a result of these meetings, Defendants contracted for WKI to recruit workers for their operations.[8] Campos has testified each employer intended WKI to use the H-2A Program to recruit workers.[9]

Defendant Skyline has objected to the purported existence of its agreement. Plaintiffs have submitted a document dated March 14, 2012 entitled "Agreement of Outsourcing Support" ("Skyline Agreement"), allegedly signed by Ronnie Franzoy ("Ronnie") and binding Skyline and WKI in a recruiting arrangement.[10] However, Marty D. Franzoy ("Marty Franzoy," or "Marty") has testified he is the owner and managing partner of Skyline, whereas Ronnie is a minority partner with no authority to

---

[4] Pls.' App. 18:11–19:1.

[5] 8 U.S.C. § 1188(a)(1)(A).

[6] *Id.* § 1188(b)(4).

[7] Pls.' App. 50:21–51:12, 65:6–10, 180:4–17, 218:6–12.

[8] *Id.* at 257, 259; Cervantes–RJF Compl., Exs. 2–3; ECF Nos. 1-2–1-3; filed Apr. 30, 2014. Although Cervantes's agreement refers to "Cervantes Agribusiness," Cervantes does not dispute this agreement contains Cervantes's physical address and phone number, rather than those of Cervantes Agribusiness. Furthermore, Cervantes does not dispute it was signed by a person with authority to bind Cervantes to a contract.

[9] Pls.' App. 157:19–25.

[10] *Id.* at 744.

3

bind Skyline into any contracts.[11]  Marty stated that, although WKI's representatives solicited Skyline's interest in recruitment services, he told them "Skyline did not need workers and was not interested in contracting with WKI for labor."[12]  Marty further testified he was unaware of the existence of any signed agreement prior to May 2012 when WKI's representatives visited him and presented him with the Skyline Agreement.[13]  Although Marty's signature is on the document above the word "Cancelled," Marty states he signed the Skyline Agreement at that time only because he "did not want any issues with WKI" and the representatives told him they needed his signature to "cancel" the agreement.[14]

Campos's testimony provides a different account of this document.  According to Campos, the Skyline Agreement was signed at a March 14, 2012 meeting between Campos and Ronnie, where Marty spoke to Ronnie by phone.[15]  Campos has stated he understood Ronnie had authority from Marty to sign the document.[16]  Although there was not an extensive discussion regarding the details of the arrangement at the March 14th meeting, Campos testified Ronnie "knew about everything" regarding WKI's work, based on prior discussions.[17]

Pursuant to the agreements, WKI received conditional approval from the Department of Labor for its H-2A applications, subject to U.S. recruitment.[18]  Campos then coordinated with the Texas Workforce Commission regarding Texas recruitment and began to circulate information about job

---

[11] *Id.* at 741–42.

[12] *Id.* at 742.

[13] *Id.*

[14] *Id.*

[15] Pls.' App. 180:10–17.

[16] *Id.* at 181:4–6.

[17] *Id.* at 183:10–19.

[18] Pls.' Resp. Lack 25–26.

opportunities.[19] Plaintiffs, fifteen farmworkers residing in El Paso and Hidalgo Counties, Texas, subsequently received information about those jobs and engaged in further discussions with Campos and WKI.[20] As a result, Plaintiffs reached agreements with WKI to work for Defendants.[21] However, neither WKI nor Defendants provided the employment envisioned by Plaintiffs' agreements.[22]

Plaintiffs filed two suits in the Western District of Texas on April 30, 2014, seeking relief for violations of the Migrant and Seasonal Agricultural Worker Protection Act ("MSPA"), breach of contract, and promissory estoppel.[23] Those were consolidated under the above-captioned number on November 7, 2014.[24] Defendants have filed motions seeking dismissal for want of personal jurisdiction and, alternatively, dismissal for improper venue (requested by RJF)[25] or transfer to the District of New Mexico (requested by Lack).[26] Lack has also requested an evidentiary hearing regarding personal jurisdiction.[27]

In response to the jurisdictional objections, the court permitted jurisdictional discovery in two orders. The first order, entered September 29, 2014 and before consolidation, encompassed Cervantes and RJF.[28] The second order, entered post-consolidation on November 10, 2014, broadened

---

[19] Pls.' App. 68:16–25.

[20] Cervantes–RJF Compl. 10–14 ¶¶ 5.31–5.54; Lack–Skyline Compl. 9–13 ¶¶ 5.28–5.50.

[21] Cervantes–RJF Compl. 10–14 ¶¶ 5.31–5.54; Lack–Skyline Compl. 9–13 ¶¶ 5.28–5.50.

[22] Cervantes–RJF Compl. 15–17 ¶¶ 5.63–5.73; Lack–Skyline Compl. 13–16 ¶¶ 5.53–5.66.

[23] Cervantes–RJF Compl. 17–22 ¶¶ 6.1–6.29; Lack–Skyline Compl. 19–23 ¶¶ 6.1–6.29.

[24] "Order Consolidating Causes of Action," ECF No. 53.

[25] RJF's Mot. 6–7.

[26] Lack's Mem. 9–10.

[27] Lack's Reply 13–14.

[28] "Order Granting Limited Jurisdictional Discovery," ECF No. 45.

jurisdictional discovery to include Skyline and Lack.[29]

    B.    *Defendants' Arguments*[30]

Defendants argue there is insufficient evidence to support the exercise of personal jurisdiction, as they did not play a direct role in recruiting Plaintiffs and did not intend for WKI to engage in Texas recruitment, and also have no property or operations in Texas.[31] Furthermore, Defendants claim there is no basis for imputing personal jurisdiction from WKI (indisputably subject to personal jurisdiction in Texas) to them, as WKI was not in an agency relationship with any of them.[32] As mentioned above, Skyline asserts there is not even an arguable basis for exercising personal jurisdiction over it because the purported agreement between WKI and Skyline is inauthentic.[33]

    C.    *Plaintiffs' Arguments*

Plaintiffs claim jurisdictional discovery has provided sufficient evidence to support exercising personal jurisdiction over Defendants. They assert Campos's testimony provides evidence not only that Defendants intended WKI to recruit workers with the H-2A Program, but also that they were informed the H-2A Program mandated Texas recruitment.[34] To the extent Defendants were not aware of the Program's Texas recruiting requirement, Plaintiffs claim other circumstances, such as WKI's locations in

---

[29] "Order Granting Additional Limited Jurisdictional Discovery and Extending Discovery Deadlines," ECF No. 64.

[30] As the arguments regarding personal jurisdiction are sufficient to fully resolve Defendants' Motions, there is no need to discuss venue.

[31] *See, e.g.*, Cervantes's Mot. 2 ¶ 3 ("[Cervantes] has no business or offices, and conducts no business, anywhere in the State of Texas."); RJF's Mot. 4–5 ("RJF Farms simply executed a contract and agreed to pay workers who would be made available to provide processing and packing services in New Mexico during a specific time period. RJF Farms had no other role.").

[32] *See, e.g.*, RJF's Reply 7 ("The lack of evidence that RJF directed the activities of WKI also establishes that WKI was not RJF's agent but rather an independent contractor.").

[33] Skyline's Mot. 5–6.

[34] Pls.' Supp. Br. 20–27.

El Paso, Texas and Santa Teresa, New Mexico, made Texas recruitment foreseeable to Defendants.[35] Furthermore, Plaintiffs argue evidence indicates WKI was in an agency relationship with Defendants, thereby imputing personal jurisdiction from WKI to Defendants.[36]

## II. APPLICABLE LAW

Plaintiffs make federal and state law claims against Defendants, and assert this court has federal question jurisdiction over the MSPA claim and supplemental jurisdiction over the state breach of contract and promissory estoppel claims.[37] In a federal question case where the implicated federal statute does not provide for service of process,[38] the court must determine whether the long-arm statute of the state in which it sits would subject the defendant to personal jurisdiction.[39] This standard also applies when a state law claim is brought before a court under supplemental jurisdiction.[40] The Texas long-arm statute has been interpreted by Texas courts to reach "as far as the federal constitutional requirements of due process will allow."[41] This court, therefore, has personal jurisdiction over Defendants with regard to all of Plaintiffs' claims if the requirements of due process are satisfied.

Due process is satisfied if the nonresident defendant: (1) has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state and

---

[35] *Id.* at 27–32.

[36] *Id.* at 32–37.

[37] Cervantes–RJF Compl. 2 ¶ 2.1; Lack–Skyline Compl. 2 ¶ 2.1.

[38] The MSPA does not provide for service of process.

[39] *Burstein v. State Bar of Ca.*, 693 F.2d 511, 514 (5th Cir. 1982).

[40] *See Satis Vacuum Indus. Vertriebs, AG. v. Optovision Techs., Inc.*, No. Civ.A. 3:99CV2147-M, 2001 WL 694580, at *2 n.4 (N.D. Tex. June 14, 2001) (noting the "distinction is immaterial" between what is required for personal jurisdiction under diversity jurisdiction, which looks to the reach of the forum state's long-arm statute, and supplemental jurisdiction via a federal question).

[41] Tex. Civ. Prac. & Rem. Code §§ 17.041–.045; *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010).

(2) the exercise of jurisdiction over the defendant does not offend traditional notions of "fair play and substantial justice."[42] The defendant must "have sufficient contacts with the forum state such that [he] should reasonably anticipate being haled into court there."[43] Thus, "the nonresident must have some minimum contact with the forum which results from an affirmative act on his part . . . [and] it must be fair and reasonable to require the nonresident to defend the suit in the forum state."[44]

Personal jurisdiction may be either general or specific.[45] Specific jurisdiction exists where "a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."[46] To determine if sufficient minimum contacts exist, the court considers the quality and nature of any contacts with the state and examines the relationship among the nonresident defendant, the forum, and the litigation.[47] If the defendant lacks sufficient contacts, exercise of specific jurisdiction would violate a defendant's Fourteenth Amendment right to due process.[48]

If the court determines the nonresident defendant has sufficient minimum contacts with the state, it must then determine whether the exercise of specific jurisdiction comports with "traditional notions of

---

[42] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

[43] *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493 (5th Cir. 2012) (internal quotation marks omitted).

[44] *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985).

[45] *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 204–07 (5th Cir. 1996). Plaintiffs provide no evidence that Defendants' contacts with Texas were continuous and systematic, but rather that all of the relevant contacts were in association with their agreements with WKI. Accordingly, this order will not address general jurisdiction.

[46] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 1999) (internal quotation marks omitted).

[47] *Int'l Shoe*, 326 U.S. at 318–19.

[48] *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108–09 (1987).

fair play and substantial justice."[49]  When evaluating this issue, a court will examine the following: 1) the burden on the defendant; 2) the interests of the forum state; 3) the plaintiff's interest in convenient and effective relief; 4) the interest of the judicial system in efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies.[50]

Where a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant.[51]  When a district court rules on this motion without conducting an evidentiary hearing, the plaintiff can meet its burden by presenting a prima facie case for jurisdiction.[52]  In addition, the court must accept the plaintiff's uncontested allegations as true and resolve all conflicting facts in the plaintiff's favor.[53]

### III.  DISCUSSION

####   A.  *Personal Jurisdiction*

#####     1.  The Disputed Skyline Agreement

Marty Franzoy's account provides no basis on which a binding agreement could have been formed between Skyline and WKI.  On the other hand, Campos testified Ronnie spoke on the phone to Marty before signing the Skyline Agreement.  From this, a jury could plausibly conclude Ronnie had actual authority to bind Skyline into an agreement.[54]

---

[49] *Int'l Shoe*, 326 U.S. at 316.

[50] *Asahi Metal Indus.*, 480 at 113; *World-Wide Volkswagen*, 444 U.S. at 292.

[51] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

[52] *Wilson*, 20 F.3d at 648.

[53] *Id.*

[54] *See Suarez v. Jordan*, 35 S.W.3d 268, 273 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (noting that actual authority is "created through conduct of the principal communicated . . . to the agent").

Disputed facts in a Rule 12(b)(2) motion to dismiss must be resolved in favor of the plaintiff.[55] Furthermore, although a prima facie case for personal jurisdiction is sufficient to defeat a Rule 12(b)(2) motion, Plaintiffs still have to prove jurisdictional facts at trial by a preponderance of the evidence.[56] While Marty's assertions might prevail on jurisdictional grounds at trial, they fail to defeat Plaintiffs' prima facie case that Ronnie had authority to sign the Skyline Agreement. Accordingly, the court will assume the Skyline Agreement was supported by Ronnie's actual authority for purposes of evaluating Skyline's Motion.

2. Minimum Contacts

To the extent Defendants intended WKI to engage in Texas recruitment, WKI's Texas recruitment can give rise to personal jurisdiction over Defendants.[57] The question is whether Plaintiffs have made a prima facie case of such intent. After due consideration, only Plaintiffs' cases against Lack and Skyline need to be addressed to fully resolve Defendants' Motions.

Pursuant to the court's discovery orders, Campos was deposed twice. The first deposition, on October 9, 2014, occurred before consolidation, meaning the questioning did not focus on either Lack or Skyline.[58] Jurisdictional facts concerning Lack and Skyline, as well as RJF and Cervantes, were developed at Campos's second deposition, on January 6, 2015.[59]

In his second deposition, Campos responded to a question by stating he never informed one of Lack's representatives that WKI intended to recruit workers from Texas, and furthermore, he would

---

[55] *Wilson*, 20 F.3d at 648.

[56] *Brown v. Slenker*, 220 F.3d 411, 419 (5th Cir. 2000).

[57] *See Burger King*, 471 U.S. at 476 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.").

[58] *See* Pls.' App. 50:12–20 (confirming the deposition only focuses on RJF, Cervantes, and Rio Valley Chili, Inc., a defendant later dismissed from this cause).

[59] *See id.* at 156:3–8 (inquiring into what Campos discussed with RJF, Cervantes, Lack, and Skyline).

answer an analogous question about Skyline, as well as RJF and Cervantes, "basically the same."[60] However, to the extent Campos contradicted this testimony, there are disputed facts which must be resolved in Plaintiffs' favor.

During his second deposition, Campos stated that he told "all the farmers" WKI was going to recruit workers through the H-2A Program.[61]  This is prima facie evidence Lack and Skyline intended WKI to utilize the H-2A Program.  However, it is not sufficient to indicate Lack or Skyline intended or foresaw Texas recruitment.[62]

Plaintiffs aver that the following segment of Campos's second deposition demonstrates he told Lack and Skyline he would be recruiting in Texas:

> Question:    So my question is is it accurate that you told all of the farmers, including all of the defendants in both cases, that you would -- H-2A regulations required you to recruit in the surrounding states, then that would include Texas?
> [Cervantes's attorney objects to the form of the question.]
> Answer:    The labor department -- federal labor department requires that.
> Question:    Is that a yes?
> [Cervantes's attorney objects to the form of the question.]
> Answer:    Yes.[63]

The initial question encompasses two inquiries: (1) what Campos told interested farmers, and (2) the substance of the H-2A Program's requirements.[64]  Campos's first answer ("The . . . federal labor department requires that.") indicates his response focuses on the substance of the Program's requirements, not whether he told farmers about those requirements.  Because Campos's answer has an

---

[60] *Id.* at 215:21–216:7.

[61] *Id.* at 157:19–25.

[62] *See Chery v. Bowman*, 901 F.2d 1053, 1056 (11th Cir. 1990) ("Although Bowman learned that the Virginia local office had sent his clearance orders to Florida [pursuant to the H-2A Program], he never requested this action.").

[63] Pls.' App. 160:16–161:1.

[64] The question could be construed broadly to include a third query: whether Texas is one of New Mexico's surrounding states.

ambiguous meaning and a proper objection was lodged,[65] this is not prima facie evidence Campos told Lack and Skyline about Texas recruiting.

Additional relevant testimony focused on Skyline. Campos's testimony about the March 14, 2012 meeting with Ronnie and (by telephone) Marty Franzoy does not indicate Marty was informed about the H-2A Program requiring Texas recruiting. On the contrary, Campos stated there was very little, if any, discussion of the H-2A Program at that meeting due to Ronnie's knowledge about his and WKI's business.[66] Even if the court assumes, as implied by Campos, Ronnie knew about WKI's intent to use the H-2A Program and recruit in Texas,[67] there is no indication Marty was aware of those details at the meeting. As Plaintiffs concede Marty's consent was required to bind Skyline into an agreement,[68] Campos's testimony about the March 14, 2012 meeting does not indicate Skyline (through Marty Franzoy) intended or foresaw Texas recruitment even when the testimony is construed in a light most favorable to Plaintiffs.

Even though Plaintiffs have not shown Lack and Skyline knew WKI would recruit in Texas, they argue personal jurisdiction should be found because the two defendants *should have known* WKI would recruit in Texas.[69] Plaintiffs aver the court "should not allow the relatively established, sophisticated [Lack and Skyline] to . . . avoid being charged with knowledge of the natural consequence of their seeking [H-2A] workers: recruitment in Texas."[70]

Plaintiffs have shown that Lack and Skyline intended to use the H-2A Program. Even though

---

[65] *See* Fed. R. Civ. P. 30(c)(2) ("[Deposition] testimony is taken subject to any objection.").

[66] Pls.' App. 183:10–19.

[67] *See id.* at 183:15–17 (discussing Ronnie Franzoy's knowledge and stating "[h]e knew about everything").

[68] *See* Pls.' Supp. Br. 15–16 (stating Marty "manages all labor matters" for Skyline and "authorized" Ronnie to sign the Skyline Agreement on Skyline's behalf).

[69] *Id.* at 23.

[70] *Id.* at 25.

this could be viewed as creating personal jurisdiction in other states, at least one court of appeals has rejected this argument.  In *Chery v. Bowman*, a Virginia employer utilized the H-2A Program with the help of a recruiting agent.[71]  In accordance with federal requirements, the Department of Labor transferred copies of a clearance order listing details about the employer's job opportunity to Florida as a potential source of workers.[72]  After several workers from Florida — who originally learned about the opportunity and had extensive communications with the employer and his recruiting agent while in Virginia prior to being hired — were terminated by the employer, they filed suit against the employer in a Florida federal district court.[73]  The Eleventh Circuit found the circulation of the clearance order to Florida, which was not requested by the employer, did not constitute purposeful availment of the Florida forum, which would subject the employer to specific jurisdiction in the state.[74]  In light of *Chery*, Plaintiffs cannot make intent to use the H-2A Program the sole basis for personal jurisdiction in Texas, even if the Program's requirements make Texas recruitment a natural consequence of using the Program.

        Plaintiffs also aver WKI's El Paso address (listed on a Department of Labor certificate shown to Lack and Skyline), as well as Campos's plans to house workers in El Paso, provide sufficient contacts for personal jurisdiction.[75]  However, for specific jurisdiction to exist, more is required than contacts with a forum state; such contacts must give rise to a cause of action.  Absent a principal–agent relationship, a party does not subject itself to personal jurisdiction in a foreign state solely by contracting with a

---

[71] 901 F.2d at 1054.

[72] *Id.* at 1054–55.

[73] *Id.*

[74] *Id.* at 1056–57.

[75] Pls.' Supp. Br. 27–28; Pls.' App. 135.

13

recruiter in the foreign state who hires workers in the foreign state.[76]  Furthermore, Plaintiffs' cause of action arises out of Texas recruitment efforts, not plans to house workers in Texas regardless of their places of origin.

Plaintiffs' remaining foreseeability argument asserts a consistent supply of Texas farmworkers in New Mexico's labor market, as well as WKI listing its locations in Santa Teresa, New Mexico[77] and El Paso, made recruitment of Texas workers foreseeable to Lack and Skyline.  While foreseeability is relevant in determining whether a party has minimum contacts with a forum state,[78] a party does not meet the minimum contacts requirement simply because contact with a forum state is foreseeable.  Instead, what is critical is whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there."[79]

As already discussed, even if a party's recruiter is located in a forum state, that is not sufficient for the forum state to extend personal jurisdiction over the party in a dispute involving a recruited person.[80]  In support of their argument concerning the New Mexico labor market, Plaintiffs cite *Moncevoir Hyppolite v. Gorday*[81] for the proposition that parties who regularly hire workers from another state are subject to personal jurisdiction in that state.[82]  However, the *Moncevoir Hyppolite* court relied

---

[76] *See Sarmiento v. Producer's Gin of Waterproof, Inc.*, 439 F. Supp. 2d 725, 730 (S.D. Tex. 2006) ("Even in the cases relied upon by Plaintiffs for the proposition that nonresident employers are subject to personal jurisdiction based on their agents' recruitment of migrant farmworkers, such personal jurisdiction was based on evidence of an established principal-agent relationship between the nonresident defendant and the recruiter.").

[77] According to Plaintiffs, the provided Santa Teresa address is less than a mile from the Texas border.  Pls.' Supp. Br. 31.

[78] *World–Wide Volkswagen*, 444 U.S. at 297.

[79] *Id.*

[80] *Sarmiento*, 439 F. Supp. 2d at 730.

[81] No. 89-1843-CIV-NESBITT, 1990 WL 80684 (S.D. Fla. Mar. 22, 1990).

[82] Pls.' Supp. Br. 31.

on allegations that a defendant had employed recruiters within a forum state with the purpose of hiring workers within that state.[83]  By contrast, no evidence in the record indicates either Lack or Skyline was aware WKI intended to recruit workers in Texas.  As Plaintiffs have not presented any evidence demonstrating Lack's and Skyline's intent to recruit Texas workers through WKI, Plaintiffs' labor-market argument fails.

         3.      <u>Imputed Personal Jurisdiction</u>

Plaintiffs argue that personal jurisdiction may be imputed to Lack and Skyline through their business relationship with WKI.[84]  In order for the court's personal jurisdiction over WKI to be imputed to Defendants, a principal–agent relationship must be established between the parties.[85]  Such a relationship cannot be presumed to exist, but must be established.[86]  Under Texas law, an agency relationship requires that "[t]he alleged principal must have the right to control both the means and the details of the process by which the alleged agent is to accomplish his task."[87]  Consequently, the court will examine Plaintiffs' claims regarding WKI's relationships with Lack and Skyline.  For these purposes, WKI's relationships with other parties are not sufficient evidence of the purported agency relationships with Lack and Skyline.[88]

Campos testified that a slogan on a WKI flier, "We provide solutions and collaboration to all our

---

[83] *Moncevoir Hyppolite*, 1990 WL 80684, at *4.

[84] Pls.' Supp. Br. 32.

[85] *See Flores v. A.C., Inc.*, No. EP-02-CA-0200-DB, 2003 WL 1566507, at *7 (W.D. Tex. Mar. 5, 2003) ("For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal.").

[86] *Id.*

[87] *Matter of Carolin Paxson Adver., Inc.*, 938 F.2d 595, 598 (5th Cir. 1991) (citing *Xarin Real Estate, Inc. v. Gamboa*, 715 S.W.2d 80, 84 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.); *Johnson v. Owens*, 629 S.W.2d 873, 875 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.)).

[88] *See* Pls.' Supp. Br. 34 (asserting WKI's agency relationships with Lack and Skyline are demonstrated by the belief of Ronnie Franzoy, an officer of RJF, that he "retain[ed] complete control over how WKI recruited workers for RJF").

customers," was intended to tell farmers WKI wanted "to get things done the way that the farmers wanted things to be done."[89] Plaintiffs assert this is evidence of agency relationships with Lack and Skyline.[90] There is no evidence Lack or Skyline understood the slogan to have the meaning advanced by Campos. Accordingly, this does not evince agency relationships.

Plaintiffs also argue agency relationships are demonstrated by Lack and Skyline expecting Campos to adhere to the requirements of the H-2A Program.[91] However, requiring a subordinate to comply with existing law; when such compliance does not provide a right to control the means, methods, or details of the subordinate's work; does not demonstrate an agency relationship under Texas law.[92] For this reason, Plaintiffs' argument fails.

Plaintiffs claim agency relationships are shown by WKI's lack of knowledge of how agricultural labor is performed, meaning that "[t]o accept that [Lack and Skyline] did not control recruiting, the finder of fact would have to accept that [Lack and Skyline would] pay any person who WKI alone chose to recruit without input from [them]."[93] However, Texas law does not presume an agency relationship exists solely because a principal has authority to approve the final results of the purported agent's work. A principal's right to approve final results is inherent in any working relationship, not just an agency

---

[89] Pls.' App. 206:2–207:5, 240.

[90] Pls.' Supp. Br. 34–35.

[91] *Id.* at 35; *see also* Pls.' App. 606:16–21 (stating Lack's representative's expectation that Campos would follow federal law).

[92] *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606–07 (Tex. 2002) (finding a contract that placed on a purported contractor a duty to take necessary safety precautions for employees did not create a principal–agent relationship).

[93] Pls.' Supp. Br. 35. Although the record does not establish WKI's level of knowledge in agricultural work, the court will assume WKI was substantially less informed than Lack and Skyline for purposes of Plaintiffs' argument.

relationship.[94]  In order to demonstrate an agency relationship between WKI and the two defendants, Plaintiffs must show Lack and Skyline had control over how WKI recruited, not simply who WKI recruited.[95]  Accordingly, Lack and Skyline's right to approve WKI's recruited workers cannot be the basis of an agency relationship.

Next, Plaintiffs claim WKI's compliance with Lack's and Skyline's requests to stop hiring workers is evidence of a right of control.[96]  However, under Texas law, a principal has a right to end a subordinate's work even if the subordinate is an independent contractor.[97]  Consequently, this detail is not relevant to whether an agency relationship existed between WKI and the two defendants.

Plaintiffs point to Lack and Skyline's purported authority to order WKI to remove any worker they did not want.[98]  However, WKI's agreements required it to transport workers to and from employer farms on a regular basis.[99]  The right to have WKI remove unnecessary workers is a natural extension of WKI's transportation obligation, even if WKI was not the agent of Lack and Skyline.  Accordingly, this purported authority is not a basis for demonstrating agency relationships.

Finally, Plaintiffs argue WKI was so "thoroughly dependent" upon satisfying Lack, Skyline, and

---

[94] *See Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 86 (Tex. App.—El Paso 1998, pet. denied) (emphasis added) (citing *Pitchfork Land & Cattle Co. v. King*, 346 S.W.2d 598, 602–03 (Tex. 1961)) ("Factors used in determining whether a party is an independent contractor [include] his right to control the progress of the work *except as to final results* . . . .").

[95] *See Coleman v. Klöckner & Co. AG*, 180 S.W.3d 577, 588 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("Absent proof of the right to control the means and details of the work performed, only an independent contractor relationship is established.").

[96] Pls.' Supp. Br. 36; Pls.' App. 744, 809.

[97] *See Cont'l Ins. Co. v. Wolford*, 526 S.W.2d 539, 541 (Tex. 1975) ("[T]he right to stop the work exists regardless of whether Wolford was an employee or independent contractor . . . .").

[98] Pls.' Supp. Br. 36.

[99] *See* Pls.' App. 43:21–22 (stating WKI was "going to transport [workers] timely to get to the field").

its other clients that agency relationships are thereby demonstrated.[100] This argument, though relevant, is not controlling, as more is required to turn an independent contractor into an agent of whomever hired the contractor.[101]

Thus, even assuming WKI was economically dependent on Lack and Skyline, this is not enough to demonstrate agency relationships; Plaintiffs must demonstrate Lack and Skyline maintained and exerted control over WKI's activities.[102] The right of control is so crucial to agency relationships that even when multiple factors point towards an independent contractor relationship, the right of control may result in an agency relationship.[103] By contrast, Plaintiffs have presented no evidence showing that either Lack or Skyline exercised the level of control over WKI necessary to make WKI its agent.

As Plaintiffs have failed to make a prima facie case WKI was the agent of Lack or Skyline, personal jurisdiction cannot be imputed from WKI to Lack and Skyline.[104]

### B.      Transfer to the District of New Mexico

Plaintiffs have failed to show Lack and Skyline are subject to personal jurisdiction in the Western District of Texas. Even assuming Cervantes and RJF are subject to this court's jurisdiction,[105]

---

[100] Pls.' Supp. Br. 36–37.

[101] *See Household Credit Servs.*, 989 S.W.2d at 86 (citing *Pitchfork Land & Cattle Co. v. King*, 346 S.W.2d 598, 602–03 (Tex. 1961)) ("Factors used in determining whether a party is an independent contractor are: (1) the independent nature of the contractor's business; (2) his obligation to supply necessary tools, supplies, and materials; (3) his right to control the progress of the work except as to final results; (4) the time for which he is employed; and (5) the method by which he is paid, whether by the time or by the job.").

[102] *Id.*

[103] *See id.* (holding that even though a collection agency "handled accounts for other creditors[,] operated its own facilities and used its own equipment[,] and was paid on a contingency basis," there was sufficient evidence to conclude a creditor "maintained sufficient right of control over [the collection agency] and[,] moreover, exerted enough control over the details of [the collection agency]'s work to make [it] the agent of [the creditor]").

[104] As Lack and Skyline do not have sufficient contacts with Texas, it is unnecessary to consider whether exercising personal jurisdiction over them would offend traditional concepts of fair play and substantial justice.

[105] No opinion is expressed regarding the merits of Cervantes's and RJF's objections to personal jurisdiction in the Western District of Texas.

Plaintiffs will not be able to pursue all of their claims in this district. It will be inefficient, costly, and create a risk of inconsistent verdicts for Plaintiffs to proceed with a parallel cause in the District of New Mexico.[106]

Transferring this cause to the Las Cruces Division of the District of New Mexico will serve the needs of justice and judicial economy. As Las Cruces is less than fifty miles from El Paso, Plaintiffs and potential witnesses will not be overly burdened by the transfer. Retaining all claims in a single cause of action will allow Plaintiffs to efficiently pursue relief for all their claims. As transfer is clearly in the interests of justice and convenient for parties and witnesses,[107] this cause will be transferred to the Las Cruces Division of the District of New Mexico. Consequently, Lack and Skyline will be retained in the transferred cause of action, instead of being dismissed due to a lack of personal jurisdiction in the Western District of Texas.

## IV.    CONCLUSION

For the aforementioned reasons, the court enters the following orders:

1. Cervantes's "Motion to Dismiss Defendant Cervantes Enterprises, Inc. for Lack of Personal Jurisdiction" [ECF No. 16] is **DENIED AS MOOT**.

2. "Defendant RJF Farms, Inc.'s 12(b)(2) and 12(b)(3) Motion to Dismiss" [ECF No. 18] is **DENIED AS MOOT**.

3. "Defendant Lack Farm, [sic] Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction" [ECF No. 56] is **DENIED AS MOOT**.

4. "Defendant Skyline Produce, LLC's 12(b)(2) Motion to Dismiss" [ECF No. 62] is **DENIED AS MOOT**.

---

[106] No defendant disputes it is subject to personal jurisdiction in the District of New Mexico.

[107] 28 U.S.C. § 1404(a).

5.   The Clerk of the Court is hereby **INSTRUCTED** to transfer this cause to the Las Cruces Division of the District of New Mexico.

**SO ORDERED.**

**SIGNED** this **10th** day of **March**, **2015**.

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**