# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ESTEBAN ALFARO-HUITRON,
ELEAZAR GARCIA-MATA,
JOSE ANTONIO GARCIA-MATA,
JUAN GUZMAN, JOSE GERARDO JASSO,
RAUL JASSO-CERDA, ISMAEL MARTINEZ
GONZALEZ, ENRIQUE ROJAS-TORRES,
LAZARO ROJAS-TORRES,
TRINIDAD SANTOYO-GARCIA
PEDRO TAMEZ, ANGELA TREJO,
EFRAIN TREJO, SANTOS TREJO,
and YANETH TREJO,

No. CV 15-210 JCH/JHR

  Plaintiffs,

v.

WKI OUTSOURCING SOLUTIONS, LLC,
JAIME CAMPOS, CERVANTES AGRIBUSINESS,
CERVANTES ENTERPRISES, INC.,
RJF FARMS, INC., RONNIE J. FRANZOY,
TIERRA DE DIOS FARMS, LLC,
LACK FARMS, INC. and SKYLINE PRODUCE, LLC

  Defendants.


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment by Defendant Cervantes Agribusiness **[Doc. 185]** the Motion for Summary Judgment by Defendant Cervantes Enterprises, Inc. **[Doc. 186]**, and Cervantes Defendants' Motion for Partial Summary Judgment Based on Plaintiffs' Alleged Contract and Limited Contract Remedies **[Doc. 208]**. After careful consideration of the motions, briefs, and relevant law, the Court concludes that all three of the Cervantes Defendants' motions shall be granted.

Plaintiffs allege four causes of action against Cervantes Agribusiness and Cervantes Enterprises, Inc. (collectively, "Cervantes Defendants"): violation of the Agricultural Worker Protection Act, fraud, breach of contract, and civil conspiracy. The allegations are largely based on an agreement between Dino Cervantes, the general manager of both Cervantes Defendant entities, and Defendant Jaime Campos, representative of Defendant WKI Outsourcing Solutions, LLC ("WKI"). Mr. Campos and Mr. Cervantes signed an agreement under which Mr. Campos would provide 15 agricultural workers to work for Mr. Cervantes from November 10, 2011 to March 9, 2012. **[Doc. 206-2, p. 1]** The Agreement states that the workers would be skilled farm laborers and would be United States citizens, legal residents, or foreign workers with temporary H-2A working visas. **[Doc. 206-2, p. 1]**

## I.     THE PLAINTIFFS

Only nine of the 14 plaintiffs in this case assert causes of action against the Cervantes Defendants. Those nine are: Esteban Alfaro-Huitron, Eleazar Garcia-Mata, Jose Antonio Garcia-Mata, Juan Guzman, Enrique Rojas-Torres, Lazaro Rojas-Torres, Raul Jasso-Cerda, Trinidad Santoyo-Garcia, and Pedro Tamez.

## II.    BACKGROUND

According to a June 12, 2011 article in the *El Paso Times*, Jaime Campos founded WKI, a farmworker employment agency designed to help farmers in southern New Mexico with a reported worker shortage that was negatively impacting their harvests. **[Doc 206-7, p. 11]** The article explained that WKI was in the process of becoming certified by the U.S. Department of Labor to obtain temporary work visas for Mexican farm laborers who could fill the need described by the farmers interviewed for the article. No representative from either Cervantes Defendant entity was quoted or mentioned in the article.

Mr. Campos testified in a deposition that the purpose of WKI was to get H-2A workers to serve New Mexico farms. **[Doc. 206-1, p. 6, 16:11-15]** Mr. Campos explained that the labor shortage was allowing farm laborers to take advantage of the farmers by working unpredictable hours, missing days of work, and even drinking beer on the job, but the farmers could not fire them because there was no one else to do the work. **[Doc. 206-1, p. 7, 19:14-20:7]** According to Mr. Campos, the lack of reliable workers sometimes led farmers to hire undocumented laborers instead. **[Doc. 206-1, p. 7, 18:17-20:7]** Mr. Campos knew of the H-2A visa program, which was designed to be a legal way to bring foreign laborers to the United States and which he believed would help both the farmers and the foreign laborers who wanted to come do the work in the United States. **[Doc. 206-1, p. 7, 18:24-19:11, 20:25-21:12]**

Mr. Campos explained in a deposition that in the beginning he contacted farmers to discuss their expectations for the following growing season. **[Doc. 206-1, p. 13, 42:5-17]** Mr. Campos stated that most farmers told him they were planning on growing smaller crops because they did not have a reliable labor force to do a full harvest. **[Doc. 206-1, p. 13, 42:5-17]** During his meetings with farmers, Mr. Campos explained that his plan was to apply for an H-2A visa for workers whom WKI would then outsource to the farmers. **[Doc. 206-1, p. 13, 43:20-23]** He also informed them that the ability to bring those workers was not guaranteed, but was subject to the approval of the U.S. Department of Labor. **[Doc. 206-1, p. 13, 44:21-45:17]** Mr. Campos estimates that he met with about ten farmers on behalf of WKI. **[Doc. 206-1, p. 14, 47:13-16]**

Representatives from five southern New Mexico farms signed agreements to accept workers from WKI. WKI used the same written Agreement of Outsourcing Support form, written by Mr. Campos, with each of the five farms that agreed to accept WKI laborers. **[Doc. 206-1, p. 22, 7:9-22]** Mr. Campos testified that he gave the same presentation to all the farmers,

during which he explained that he would seek H-2A workers and would include the signed Agreement in his application for those workers. **[Doc. 206-1, p. 22, 8:4-12; p. 23, 10:19-11:8]** Mr. Campos met with Dino Cervantes, the general manager of Cervantes Agribusiness and managing vice president of Cervantes Enterprises, on September 10, 2011 at Cervantes Enterprises' Vado, New Mexico office. **[Doc. 206-1, p. 51, 7:14-17; p. 53, 14:21-15:5]** When Mr. Cervantes was asked why he agreed to meet with Mr. Campos, Mr. Cervantes replied that "[Mr. Campos] was proposing a new business … involving foreign workers through the H-2A program, and it sounded interesting to me." **[Doc. 206-1, pp. 54-55, 21:20-22:3]** Mr. Campos testified that Mr. Cervantes did not tell him where to find labor, and Mr. Campos did not tell Mr. Cervantes that he was going to find that labor in any specific state. **[Doc. 206-1, p. 34, 77:18—p. 35, 78:6]** Mr. Campos did not ever speak with a representative of Cervantes Enterprises other than Dino Cervantes. **[Doc. 206-1, p. 35, 78:7-11]**

Mr. Cervantes signed the Agreement of Outsourcing Support to employ 15 agricultural workers from November 10, 2011 to March 9, 2012. **[Doc. 206-2, p. 1]** Mr. Campos testified that when he completed the Agreement of Outsourcing Support with Mr. Cervantes, he did not realize there was a distinction between Cervantes Enterprises and Cervantes Agribusiness. **[Doc. 206-1, p. 29, 51:12-52:6]** Mr. Campos filled in the name Cervantes Agribusiness on the form because that was the name on the business card he had from Mr. Cervantes. **[Doc. 206-1, p. 29, 52:16-23]** Plaintiffs point out that although the Agreement names only Cervantes Agribusiness, it provides the address for Cervantes Enterprises and a description of work done by Cervantes Enterprises ("Processing and Packing: Dry Red Chile and Other Spices"). **[Doc. 206-2, p. 1]** Plaintiffs also point out that on WKI's H-2A application to the U.S. Department of Labor, under

the heading "Locations and Directions to Work Site," Mr. Campos listed Cervantes Enterprises' name and address. **[Doc. 206-2, p. 13]**

The Agreement of Outsourcing Support names as parties WKI Outsourcing and Cervantes Agribusiness. **[Doc. 206-2, p. 1]** The Agreement states that it is "for services as a work force provider," such work force consisting of "skilled farm labor workers; U.S. Citizens, legal residents, or foreign workers with temporary working visas (H-2A)." **[Doc. 206-2, p. 1]** The Agreement was effective from November 10, 2011 to March 9, 2012, under which WKI would "provide 15 farm workers on a daily basis" and would be responsible for paying each of those workers. **[Doc. 206-2, p. 1]** Under the Agreement the workers would be responsible for "Processing & Packing: Dry Red Chile & Other Spices." **[Doc. 206-2, p. 1]** The Agreement was signed and dated September 10, 2011 by Dino Cervantes and Jaime Campos. **[Doc. 206-2, p. 1]**

WKI's profits would be based on a rate of approximately one dollar for each hour of labor one of its outsourced workers completed. **[Doc. 206-1, p. 15, 52:19-53:5]** The hourly wage paid by the farmers would be based on the actual wage to be paid by WKI to the worker, plus approximately one dollar, which WKI would keep to cover expenses. **[Doc. 206-1, p. 15, 52:19-53:19]** WKI did not have the capital to pay workers itself, but was dependent on the funds paid by farmers under each contract. **[Doc. 206-1, p. 16, 72:10-25]** Mr. Campos testified that the farmers were aware of WKI's profit arrangement, whereby WKI would receive about one dollar for every outsourced hour of labor. **[Doc. 206-1, p. 15, 53:12-18]**

Another farmer who signed an agreement with Mr. Campos was Ronnie Franzoy of RJF Farms, with whom Mr. Campos met at least five times.[1] **[Doc. 206-1, p. 14, 48:16-17, 49:8-15]** Mr. Franzoy testified that he preferred to hire Mexican laborers, and that his understanding was

---

[1] Ronnie Franzoy and RJF Farms are former defendants in this matter. Plaintiffs voluntarily dismissed with prejudice all claims against them. **[Doc. 148]**

Mr. Campos would supply him with Mexican laborers; however Mr. Franzoy also stated that he had no intention of paying Mexican laborers a wage of approximately $10.00 per hour as envisioned under the H-2A program. **[Doc. 206-1, p. 76, 39:24-25; p. 78, 47:1-21]** Mr. Franzoy's understanding was that he would pay Mr. Campos $8.65 per hour of outsourced labor, with $7.50 going to the laborer and the remaining $1.15 to WKI. **[Doc. 206-1, p. 81, 74:22-25 – 75:1-14]** But Mr. Cervantes, when asked whether he planned on paying H-2A workers the statutorily fixed wage of $9.71 per hour of labor, replied that he and Mr. Campos discussed neither the laborers' nor Mr. Campos's wages. **[Doc. 206-1, p. 55, 24:15-25]**

In order to access foreign laborers through the federal H-2A visa program, an employer must apply with the Department of Labor for a certification that:

> **(A)** there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and
> **(B)** the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed.

8 U.S.C. § 1188(a)(1). Mr. Campos understood this meant that WKI was required to hire every worker from the United States who applied before it would be allowed any H-2A foreign workers. **[Doc. 206-1, p. 8, 22:8-18]** WKI was also required to include in its application any agreements it made with the farmers, demonstrating the timeframe and number of workers needed. **[Doc. 206-1, p. 11, 35:3-22]** On September 30, 2011, Mr. Campos filed an application with the U.S. Department of Labor requesting certification to hire laborers under the H-2A visa program. **[Doc. 206-2, pp. 3-13]** In the application Mr. Campos represented that "[a]t this time, there are not sufficient workers who are able, willing or available at the time and place needed to perform the farm labor and services required by such farmers." **[Doc. 206-2, pg. 3]** The application listed five farms and packing companies in southern New Mexico as potential

worksites, including Cervantes Enterprises. **[Doc. 206-2, p. 13]** It also stated that the workers would be paid $9.71 per hour. **[Doc. 206-2, p. 8]** Mr. Campos included his agreements with the farmers, which he told the farmers in advance he would do. **[Doc. 206-1, p. 11, 35:3-22]** Federal law also required Mr. Campos to include the agreements with the farmers as part of the H-2A application. **[Doc. 206-1, p. 11, 35:12-12]** *See* 20 C.F.R. § 655.132(b)(4) (stating that an H-2A application must include "[c]opies of the fully-executed work contracts with each fixed-site agricultural business.") Mr. Campos also included ETA Form 790 that contained a detailed description of the job, worksite, and pay. **[Doc. 103-6]**

On October 7, 2011, a week after Mr. Campos filed the H-2A application, the Department of Labor sent a Notice of Deficiency to WKI, explaining that its application failed to meet certain criteria for acceptance. The Notice explained in detail those deficiencies and informed WKI that it could make modifications and resubmit its application within five business days. **[Doc. 206-2, pp. 14-21]** WKI remained in contact with the Department of Labor, and sent letters explaining some of the deficiencies and its efforts to complete a modified application on October 14, 2011 and October 18, 2011. **[Doc. 206-2, pp. 22-24]** On October 19, 2011, the Department received WKI's response to the Notice of Deficiency, which included a modified application for employment certification. **[Doc. 206-2, pp. 25-26]** On October 20, 2011, the Department of Labor sent a second Notice of Deficiency to WKI detailing further required modifications. **[Doc. 206-3, pp. 1-6]** WKI again submitted a modified application, which was received by the Department on November 1, 2011 and which requested that the application be immediately processed, due to the "emergency situation" and a projected start date of November 28, 2011. **[Doc. 206-3, pp. 7-10]** On November 4, 2011, the Department of Labor notified WKI

that its application for certification under the H-2A program had been accepted for processing and outlined the requirements for final certification. **[Doc. 206-3, pp. 11-15]**

In order to receive certification under the H-2A program, WKI had to demonstrate that it worked with the State Workforce Agency to recruit intrastate workers and that it took additional recruitment steps on its own, including taking out newspaper advertisements. **[Doc. 206-3, pp. 11-15]** Mr. Campos worked with the Texas Workforce Commission ("TWC") to recruit U.S. workers. **[Doc. 206-1, p. 95, 14:22-24]** TWC did not interview prospective applicants – that was Mr. Campos's job – rather, TWC served as a sort of clearinghouse, where Mr. Campos could post information about available work and prospective applicants could learn about the job opportunities. **[Doc. 206-1, p. 88, 13:22-24; p. 95, 14:20-25-15:1]** TWC received from the Department of Labor ETA Form 790, the form that Mr. Campos submitted as part of his H-2A application. **[Doc. 206-1, p. 95, 14:22]** TWC provided prospective applicants a copy of ETA Form 790, which detailed the terms of WKI's employment offer. **[Doc. 206-1, p. 95, 14:22-23]** WKI was required to advertise the position with the $9.71 hourly wage rate listed in the application, and that rate would have to be paid to all workers who filled the positions, whether or not the employers ultimately hired foreign workers who required H-2A visas. **[Doc. 206-3, p. 12]** *See* 20 C.F.R. § 655.122(a). Mario Galvan, TWC's Migrant Seasonal Farm Worker Outreach Specialist, testified that an hourly wage of $9.71 attracted workers because it surpassed the local minimum hourly wage of $7.25. **[Doc. 206-1, p. 87, 9:6-9]**

Mr. Campos stated that TWC claimed it would provide WKI with the requisite amount of U.S. workers; however, he claimed that all he received were the workers' files from TWC, and most times the workers never showed up to do any work. **[Doc. 206-1, p. 8, 22:15-23]** Mr. Campos testified that WKI made all efforts to recruit workers that were required by the

Department of Labor and the H-2A regulations. **[Doc. 206-1, p. 25, 20:20-21:16]** Emails between employees at TWC and the Department of Labor show that TWC employees were growing frustrated with Mr. Campos's perceived attempts to violate the rules by refusing to interview certain candidates and imposing requirements beyond what was outlined in WKI's application, such as requiring resumes, an imposition TWC construed as "deterring US workers from applying" despite TWC's determination that ample US workers were available to fill the jobs. **[Doc. 206-1, p. 103, 52:7-15; Doc. 206-4, pp. 30-35]**

Meanwhile, in mid-November Mr. Campos made presentations to prospective farm laborers about the H-2A visa program. On November 15 and 17, 2011, Mr. Campos gave presentations at Sin Fronteras to an audience of 40 people, including prospective applicants, about the H-2A program. **[Doc. 206-1, pp. 43-45, 49:18-54:1-15]** According to Mr. Campos, he did not recruit workers during the meetings, but instead presented general information about the H-2A visa program and WKI's role as a farm labor contractor. **[Doc 206-1, p. 54, 50:17-23]**

During this period Mr. Campos and WKI hired six Plaintiffs – Esteban Alfaro-Huitron, Eleazar Garcia-Mata, Jose Antonio Garcia-Mata, Juan Guzman, Enrique Rojas-Torres, and Lazaro Rojas-Torres – at the Centro de Trabajadores in El Paso, Texas. **[Doc. 206-7, pp. 21-28]** Four Plaintiffs testified in later affidavits that they signed work contracts with Mr. Campos to perform farm labor, and were told that when the work began, they should to go to a designated location in El Paso where they would be then be picked up and transported to the worksite locations in New Mexico. **[*Id.*]** Mr. Campos and WKI also hired three Plaintiffs, Raul Jasso-Cerda, Trinidad Santoyo-Garcia, and Pedro, who learned of WKI's job offer through TWC. **[Doc. 206-1, p. 88, 13:4-25-14:1-19]**

On November 14, 2011, the Department of Labor received information from WKI explaining its recruitment efforts, and again asking for immediate processing due to the emergency situation and approaching start date of November 28, 2011. **[Doc. 206-3, pp. 16-17]** That same day, the Department sent WKI a notice that its application had been partially certified because it had been determined that "a sufficient number of able, willing and qualified U.S. workers have not been identified as being available at the time and place needed to fill all of the job opportunities for which certification has been requested and that employment of the H-2A workers will not adversely affect the wages and working conditions of workers in the U.S. similarly employed." **[Doc. 206-3, pp. 18]**

On November 22, 2011, WKI sent an emergency request to the Department of Labor, seeking to delay or postpone the start date and period of employment for which it had been approved. **[Doc. 206-3, pp. 23-24]** The request stated that "the agricultural producers that WKI has contracted with to provide farm labor services have informed WKI that due to severe drought conditions at the places of employment, there is no work to be performed at this time." **[Doc. 206-3, p. 23]** Plaintiffs allege that the drought conditions had been ongoing and were not a new situation, and that the real reason Mr. Campos withdrew the application was that he realized there were too many qualified U.S. workers so he would not be able to access the guest laborers from Mexico. Plaintiffs claim that Mr. Campos and the farmers, including Dino Cervantes, wanted Mexican laborers because they believed they would work harder for less money, so when it became apparent that Mr. Campos would not be able to provide Mexican workers, he cancelled his application under the pretense of a drought. Mr. Cervantes ultimately relied on another contractor to provide laborers for the Cervantes entities.

All parties agree that Plaintiffs never talked to the Cervantes Defendants directly, but rather communicated only with WKI and Mr. Campos. However, Plaintiffs argue that Cervantes Defendants are still liable for their damages because Mr. Campos, as representative of WKI, was acting as the Cervantes Defendants' agent or co-conspirator. The Cervantes Defendants maintain that they are entitled to judgment as a matter of law on each of Plaintiffs' claims. Additional facts and arguments will be provided as needed in sections that follow.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Id*. An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant. *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).

When, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Cassara v. DAC Serv., Inc*., 276 F.3d 1210, 1212 (10th Cir. 2002). The burden then shifts to the opposing party to come forward

with admissible evidence to create a genuine issue of material fact on that element. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

**B. Plaintiffs' Breach of Contract Claims**

The Cervantes Defendants argue that there is no genuine dispute concerning their liability to Plaintiffs for breach of any contract. **[Doc. 185, pp. 6-14; Doc. 186, pp. 6-12]** First, Cervantes Agribusiness argues that the Agreement of Outsourcing Support signed by Jaime Campos and Dino Cervantes is not an enforceable contract, **[Doc. 185, p. 7]** and neither are the documents Plaintiffs cite in support of the existence of an employment contract between Plaintiffs and WKI. **[Doc. 185, pp. 9-10]** Cervantes Enterprises points out that it is not mentioned by name on any agreement with WKI [2], and it disputes that the documents cited by Plaintiffs support a contract between Plaintiffs and WKI show that there was any contractual relationship between Plaintiffs and Cervantes Enterprises. **[Doc. 186, pp. 8-9; 12]** Both Cervantes Defendants further argue that there is no evidence that they authorized Campos or WKI to act as an agent of either Cervantes entity such that they could be held liable for any actions taken by Campos or WKI. **[Doc. 185, pp. 9-12; Doc. 186, pp. 8-11]** Cervantes Agribusiness also argues that Plaintiffs cannot meet their burden of proof under a third-party liability theory because: (1) the Agreement of Outsourcing Support is not a contract between Cervantes Agribusiness and WKI; (2) even if

---

[2] There is no mention of Cervantes Enterprises in the Agreement; only Cervantes Agribusiness is named. However, Plaintiffs argue that the agreement also involved Cervantes Enterprises because the address provided is actually for Cervantes Enterprises, not Cervantes Agribusiness, and the type of work listed is "Processing & Packing: Dry Red Chile & Other Spices," which is a function of Cervantes Enterprises, not Cervantes Agribusiness. The Court does not decide whether both Cervantes Defendants are parties to the agreement, but instead considers this a fact over which there is a genuine dispute. For purposes of deciding the motion for summary judgment, however, the Court views the evidence in the light most favorable to the Plaintiffs, and will treat the Agreement as including both Cervantes Defendants. *See Adler*, 144 F.3d at 670 ("In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant.")

there was a binding contract, there is no evidence that Plaintiffs were intended third party beneficiaries; and (3) even if Plaintiffs were third party beneficiaries of the contract, it was WKI that committed the breach, not Cervantes Agribusiness, so there would be no basis on which to hold Cervantes Agribusiness liable. **[Doc. 185, pp. 12-14]** Cervantes Enterprises argues that because it is not mentioned by name in any agreement with WKI, there is no contract under which it could be held liable for any damages to any third party beneficiary. **[Doc. 186; pp. 11-12]**

Plaintiffs' contract claim against the Cervantes Defendants presents two alternative theories of liability. **[Doc. 206, pp. 30-36]** Plaintiffs allege that the signed Agreement of Outsourcing Support was a contract between WKI and Dino Cervantes to recruit laborers for the Cervantes Defendant entities, which authorized Campos to act as an agent of Cervantes with regard to the recruitment. **[Doc. 206, pp. 30-34]** Thus, because Jaime Campos entered into employment contracts with Plaintiffs on behalf of the Cervantes Defendants as principals, the Cervantes Defendants can be held liable for the subsequent breach of those employment contracts. Alternatively, Plaintiffs claim that even without an agency relationship, they are entitled to recover under a breach of contract theory as third party beneficiaries of the Agreement of Outsourcing Support between WKI and Cervantes. **[Doc. 206, pp. 34-36]**

Because the Cervantes Defendants and Plaintiffs are not parties to the same agreement, and Plaintiffs' claims only survive if there is liability under an agency or third-party beneficiary theory, the Court begins its analysis of the contract claims by considering those alternative theories of liability.

1. ***Is there a genuine issue of material fact regarding WKI's possible agency relationship with either or both of the Cervantes Defendants?***

"An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation." UJI 13-401 NMRA 2017. An agency agreement "may be oral or written, and may be either expressed or implied by a course of conduct showing an intention that the relationship exists." *Id*. An agency relationship does not arise until "the principal has in some manner indicated that the agent is to act for him, and that the agent so acts or agrees to act on his behalf and subject to his control." *San Juan Agr. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 16, 150 N.M. 64, 257 P.3d 884, 889. Once an agency relationship is created, a principal is generally liable for the actions of the agent when the agent was acting within the scope of the agent's employment and the principal had the right to control the manner in which the agent performed the action. UJI 13-402 NMRA 2017. "[A] principal's control over the agent is the key characteristic of an agency relationship." *Carlsberg Mgmt. Co. v. State Taxation & Revenue Dep't*, 1993-NMCA-121, ¶ 12, 116 N.M. 247, 250, 861 P.2d 288, 291.

There are, of course, situations in which one person engages another to do work without forming an agency relationship. "An independent contractor is one who agrees to do certain work where the person who engages the contractor may direct the result to be accomplished but does not have the right to control the manner in which the details of the work are to be performed." UJI 13-404 NMRA 2017. The person or entity who hires an independent contractor is generally not liable for the conduct of the contractor. *Id*. "Under an agency analysis, the principal's right to control the individual performing the work often distinguishes an employee [or agent] from an independent contractor," *Celaya v. Hall*, 2004-NMSC-005, ¶ 11, 135 N.M. 115, 118, 85 P.3d 239, 242. However, the right to control is only one among many factors to

consider, including: whether the hired party is engaged in a distinct business or occupation, whether the type of work is customarily done under the direction of the employer or without supervision, the skill level required by the type of work in question, which party provides the supplies and workplace used by the hired party to complete the work, the length of time of the employment, the manner of calculating payment, whether the work is part of the employer's regular business, the parties' belief that there is an agency relationship, and whether the principal is in business. Restatement (Second) of Agency § 220 (1958); *see also Celaya*, 2004-NMSC-005, ¶ 14 (recognizing the New Mexico Supreme Court's adopting of the Restatement (Second) of Agency approach).

The Cervantes Defendants argue that there is no evidence that they authorized WKI to act as their agent, exercised the right to control WKI's work, or otherwise acted in a manner consistent with the creation of an agency relationship. **[Doc. 185, p. 11; Doc. 186, p. 10]** Plaintiffs claim that there is sufficient evidence creating a genuine issue of fact concerning whether WKI was acting as an agent of the Cervantes Defendants at the time WKI recruited and entered into employment agreements with Plaintiffs. In support, Plaintiffs cite evidence that WKI advertised itself as a farm labor recruiting agency and that the Cervantes Defendants signed an agreement authorizing WKI to "recruit workers on its behalf." **[Doc. 206, p. 30]** Plaintiffs also point to the facts that Mr. Cervantes and Mr. Campos both testified that they signed the Agreement of Outsourcing Support in order to facilitate WKI's H-2A application and that federal law required WKI to obtain the Cervantes Defendants' consent as a condition of filing its H-2A application. **[Doc. 206, p. 30]** The Court will address Plaintiffs' specific arguments related to their contention that there is a genuine issue of material fact supporting a finding that the Cervantes Defendants retained the right to control the work of WKI.

First, Plaintiffs cite the fact that another farmer, Ronald Franzoy, stated that he would retain control over how WKI recruited workers under an identical Agreement of Outsourcing Support. **[Doc. 206, p. 32]** Mr. Franzoy did testify that he normally retains "control of the contractors in [his] fields," insofar as he reserves the right to tell a contractor to remove certain workers with whom he is not satisfied. **[Doc. 206-1, p. 75]** Mr. Franzoy also stated that he had directed Mr. Campos to recruit laborers from Mexico for his farm because he was only interested in having workers from Mexico, and he expected Mr. Campos to comply with that directive. **[Doc. 206-1, p. 82]** However, Mr. Franzoy's statements that he expected to maintain control of the workers in his fields and that he only wanted workers from Mexico does not show that he exercised control over the manner in which WKI recruited those workers. More importantly, the statements by Mr. Franzoy are not relevant evidence of the relationship between WKI and the Cervantes Defendants.

Plaintiffs argue that Mr. Franzoy's statements are relevant to the Cervantes Defendants because Mr. Campos stated that he treated all the growers, including the Cervantes Defendants, the same. **[Doc. 206, p. 33]** While the citations to Mr. Campos's testimony provided by Plaintiffs on this point do support the contention that all farmers were treated the same regarding the information they received from WKI and what they agreed to pay the workers, none of those record citations support the contention that the farmers had any control over WKI's recruiting process. **[*See* Doc. 206-1, pp. 13, 20, 22, 24]** In fact, only one of the listed record citations actually addresses control over WKI's recruitment process, and that evidence directly contradicts the proposition that the farmers had control. **[*See* Doc. 206-1, p. 20]** In that portion of his deposition, Mr. Campos states that "there was no control" and "it was the same– same process

for each customer regarding that." [*Id.*] Thus, this evidence does not support the argument that WKI was authorized to act as an agent of the Cervantes Defendants.

Plaintiffs also point out that Mr. Campos testified that he always recruited in the "best interest" of the growers, and he attempted to "do things the way farmers wanted." [**Doc. 206, p. 33**] Again, the Court notes that Mr. Campos also testified that the farmers did not have control over the recruiting process. Mr. Campos's statements that he acted in the farmers' best interest and tried to do what they wanted does not demonstrate that the farmers had control over the recruitment process. At best, this shows that Mr. Campos was mindful of the end result the farmers requested. However, where one party directs only the result to be accomplished, but not the manner in which it must be accomplished, there is no agency relationship. UJI 13-404 NMRA 2017. *Accord. Shaver v. Bell*, 1964-NMSC-255, ¶ 16, 74 N.M. 700, 704, 397 P.2d 723, 727 ("Where the employee is subject only to the control or direction of the employer as to the *result to be procured*, he is an independent contractor; if he is subject to the control of the employer as to the *means to be used in reaching that result*, he is an employee.") (emphasis added)). This evidence does not show that there was an agency relationship with regard to WKI's recruiting activities.

Plaintiffs also contend that the Cervantes Defendants exercised control based on the requirements of the federal H-2A program. Essentially, Plaintiffs' argument is that Mr. Cervantes knew that WKI was recruiting pursuant to the H-2A program and that the H-2A regulations dictated the manner in which WKI could recruit workers. Thus, Plaintiffs argue, the Cervantes Defendants exercised control over the recruiting by stipulating that it would be done in the manner required by the federal H-2A program. [**Doc. 206, p. 33**] The Court does not agree that Mr. Cervantes's knowledge that WKI would comply with a federal regulatory scheme

supports the claim that the Cervantes Defendants had the right to control the manner in which WKI recruited laborers. Absent a specific requirement in the regulations giving the right to control recruitment to the farmers, the mere fact that WKI followed the law does not create an agency relationship.

Additionally, Plaintiffs argue that because WKI knew nothing about actual agricultural labor practices, WKI would lack the capacity to supervise farm workers, thereby making it necessary for the Cervantes Defendants to supervise all the workers hired by WKI. Plaintiffs believe this shows that the Cervantes Defendants would want some say in the quality of the workers hired, indicating that the Cervantes Defendants had control over the recruitment. **[Doc. 206, pp. 33-34]** However, the evidence presented by Plaintiffs does not support this theory. First, Plaintiffs have provided Mr. Campos's testimony that the farmers did not have control over the recruitment process. **[Doc. 206-1, p. 20]** Plaintiffs have also provided evidence that WKI was not allowed to vet the quality or skills of the workers, **[Doc. 206-1, p. 16]** and was required to offer a job to any available U.S. worker who applied before any foreign labor would be available. **[Doc. 206-5, p. 10]** Accordingly, there is no evidence that the Cervantes Defendants could or did have control over which workers WKI would hire.

Finally, Plaintiffs contend that WKI was thoroughly financially dependent on the four growers, including the Cervantes Defendants, listed in the H-2A application because it had no assets or other customers. Plaintiffs provide evidence that WKI did not have any other work to provide to potential employees, it had no other way to pay employees beyond its agreements with those farms, and it did not itself "decide when, what, or where work would be done." Plaintiffs contend that WKI's "economic reality" of dependence supports its agency argument based on a right to control. **[Doc. 206, p. 34]** Even if WKI was entirely financially dependent on

the Cervantes Defendants, that does not create an agency relationship absent a showing that the Cervantes Defendants had the right to control the manner in which WKI conducted its business of recruiting workers. The mere fact that the four growers were WKI's only clients does not vest in the Cervantes Defendants the right to control those recruitment activities.

Accordingly, the Court determines that the evidence presented does not create a genuine issue of material fact that would allow a reasonable fact finder to conclude that Jaime Campos or WKI were acting as authorized agents of Dino Cervantes, Cervantes Enterprises, or Cervantes Agribusiness. *See Anderson*, 477 U.S. at 248 (explaining that a fact is considered material only if it "might affect the outcome of the suit under the governing law"). There is no evidence specifically demonstrating that the Cervantes Defendants had the right to control the manner in which WKI recruited workers. *See San Juan Agr. Water Users,* 2011-NMSC-011, ¶ 16 (holding that there is no agency relationship absent an agreement that the agent will act on the principal's behalf and subject to the principal's control). Therefore, the motions for summary judgment on the breach of contract claims based on an agency theory shall be granted.

### 2. *Is there a genuine issue of material fact regarding Plaintiffs' status as third-party beneficiaries to the contract between WKI and either or both of the Cervantes Defendants?*

Generally, one who is not a party to a contract cannot sue to enforce that contract. *Fleet Mortg. Corp. v. Schuster*, 1991-NMSC-046, ¶ 4, 112 N.M. 48, 49–50, 811 P.2d 81, 82–83. An exception exists where the third party can demonstrate that the parties to the contract made the agreement with the intent of conferring a benefit on that third party. *Thompson v. Potter*, 2012-NMCA-014, ¶ 10, 268 P.3d 57, 61–62. A third party who derives only an incidental benefit from the contract will not have the right to enforce the contract. *Id*. That right is limited to situations in which "the contract is so expressed as to give the promisor reason to know that such benefit is

contemplated by the promisee as one of the motivating causes of his making the contract." *Permian Basin Inv. Corp. v. Lloyd*, 1957-NMSC-048, ¶ 22, 63 N.M. 1, 7, 312 P.2d 533, 537 (quoting Corbin on Contracts, Vol. 4, § 776, pp. 18, 19). The intent to benefit a third party can be demonstrated by either the contract itself or by evidence extrinsic to the contract showing that its provisions were in fact intended for that third party's benefit. *Valdez v. Cillessen & Son, Inc.*, 1987-NMSC-015, ¶ 34, 105 N.M. 575, 581, 734 P.2d 1258, 1264.

Plaintiffs claim they are intended third party beneficiaries of the Agreement of Outsourcing Support because the parties to the Agreement knew that the Agreement "would have provided a pecuniary benefit to a class of farm laborers that included Plaintiffs." **[Doc. 206, p. 35]** Plaintiffs further contend that the evidence shows that Dino Cervantes contracted with WKI as a favor to Jaime Campos, and that because Dino Cervantes knew that the laborers would be paid more through WKI than what Cervantes Agribusiness normally would have paid them, Cervantes Agribusiness "necessarily also intended to benefit WKI's workers." **[Doc. 206, p. 35]** Plaintiffs then refer to statements made by Campos and Ronnie Franzoy claiming those statements can fill in ambiguities in Dino Cervantes's intent concerning the signing of the Agreement. **[Doc. 206, p. 35]**

Even assuming the facts presented by Plaintiffs are true—that Dino Cervantes knew WKI's workers (Plaintiffs) would benefit from the Agreement, that Campos stated that he "needed" Mexican workers so his workers would receive the higher H-2A wage, and that Franzoy intended to benefit workers under the separate Agreement he signed with WKI—there is no evidence that Cervantes and WKI entered into the Agreement with the intent of conferring a benefit upon Plaintiffs. At most, the evidence provided by Plaintiffs shows that the parties to the agreement were aware that Plaintiffs would have been incidental third party beneficiaries of the

agreement. *See Woody Inv., LLC v. Sovereign Eagle, LLC*, 2015-NMCA-111, 362 P.3d 107, 115–16, *cert. denied* (Oct. 23, 2015) 2015-NMCERT-010, 369 P.3d 372 (holding that the statement "I guess what I would say is I think this is a benefit to everybody involved" without more evidence of intent rendered Plaintiffs, at best, incidental beneficiaries). The evidence does not show that any benefit to the Plaintiffs was a "motivating cause" in making the contract, such that they should be allowed to recover under the contract. *Permian Basin*, 1957-NMSC-048, ¶ 22. Accordingly, summary judgment in favor of the Cervantes Defendants is appropriate with respect to Plaintiffs contract claim based on third party beneficiary status.

Thus, there is no evidence giving rise to a genuine issue of material fact in support of Plaintiffs' theories of contract recovery against the Cervantes Defendants for the acts of WKI and Jaime Campos. Even assuming that Agreement of Outsourcing Support is an enforceable contract, there is no legal mechanism by which Plaintiffs can enforce that Agreement against the Cervantes Defendants. The Court will grant summary judgment in favor of the Cervantes Defendants on Plaintiffs' claims for breach of contract.

## C. **Plaintiffs' AWPA Claims**

Plaintiffs bring four statutory claims under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-1854 (2016) ("AWPA" or "Act"). All nine Plaintiffs claim that the Cervantes Defendants violated the Act's provisions relating to false information, 29 U.S.C. § 1821(f) and working arrangements, 29 U.S.C. § 1822(c). Six 2011 Plaintiffs – Esteban Alfaro-Huitron, Eleazar Garcia-Mata, Jose Antonio Garcia-Mata, Juan Guzman, Enrique Rojas-Torres, and Lazaro Rojas-Torres – assert an additional cause of action against the Cervantes Defendants for violating the certificate of registration requirement of 29 U.S.C. § 1811. Lastly, Plaintiff Enrique Rojas-Torres claims that the Cervantes Defendants violated 29 U.S.C. §

1821(a) & (g) by failing to disclose information to him in Spanish. The Court notes that no decisions from the United States Court of Appeals for the Tenth Circuit have interpreted any of the four statutory provisions that Plaintiffs invoke.

The Cervantes Defendants' defense is that their liability as to these claims is extinguished by the intermediary roles of WKI and Mr. Campos, neither of whom acted as an authorized agent. Plaintiffs respond that their claims under the AWPA can survive summary judgment based on three theories: (1) the Act imposes displaces agency principles, and imposes direct liability on the Cervantes Defendants; (2) the Cervantes Defendants and WKI "jointly employed" the Plaintiffs, thereby making them responsible for WKI's alleged violations of the Act; and (3) Mr. Campos's and WKI's alleged maltreatment of Plaintiffs occurred in an agency capacity attributable to the Cervantes Defendants.

Because the Court has already determined that Mr. Campos and WKI were not agents of Dino Cervantes or the Cervantes Defendants, the Court rejects Plaintiffs' third theory of liability – that the Cervantes Defendants are liable under the Act based on common law agency principles. At this point, the Court considers Plaintiffs' first and second theories of liability: whether the Act imposes direct liability on the Cervantes Defendants because of their agricultural employer status, and whether the Cervantes Defendants and WKI jointly employed Plaintiffs.

## 1. Law Regarding the AWPA

In 1983, Congress enacted the AWPA "to remove the restraints on commerce caused by activities detrimental to migrant and seasonal agricultural workers ... and to assure necessary protections for migrant and seasonal agricultural workers...." 29 U.S.C. § 1801 (2016). The AWPA prohibits, among other things, "agricultural employers" from making false and

misleading representations concerning employment policies and from breaching labor contracts. It also requires agricultural employers to provide written disclosures in a worker's language of working conditions, and to register with the government. *Id.* §§ 1811–44. Under the AWPA, the term agricultural employer means "any person who owns or operates a farm, ranch, processing establishment, cannery, gin, packing shed or nursery, or who produces or conditions seed, and who either recruits, solicits, hires, employs, furnishes, or transports any migrant or seasonal agricultural worker." *Id.* § 1802(2).[3] If an employer fails to adhere to any of the provisions in the AWPA the statute creates a private right of action in federal court on behalf of all aggrieved persons. *Id.* § 1854(a). The Act empowers district courts to impose actual damages or statutory damages of $500 per plaintiff per violation. *Id.* § 1854(c).

For purposes of the AWPA, the term "employ" has the same definition as that used in the Fair Labor Standards Act. *Id.* § 1802(5). "'Employ' includes to suffer or permit to work." 29 U.S.C. § 203(g) (2016). The AWPA concept of "employ" also "includes the joint employment principles applicable under the [FLSA]" 29 C.F.R. § 500.20(h)(5) (2017). The regulations promulgated under the AWPA define "joint employment" as "a condition in which a single individual stands in the relation of an employee to two or more persons at the same time." *Id.*

In applying the joint employment test, "the ultimate question to be determined is the economic reality – whether the worker is so economically dependent upon the agricultural employer/association as to be considered its employee." *Id.* § 500.20(h)(5)(iii). "[T]he joint

---

[3] Cervantes Agribusiness does not dispute that it is an "agricultural employer," and thus subject to the Act. Cervantes Enterprises does dispute that it is an agricultural employer, suggesting that the Act does not apply to it because it "farms no land and employs no seasonal farm workers." **[Doc. 186, p. 13]** However, the Act considers a "packing shed" an agricultural employer. *See* 29 U.S.C. § 1802. Plaintiffs have put forward sufficient evidence that Cervantes Enterprises is a packing shed, including the Agreement of Outsourcing that describes Cervantes Enterprises' work as "Processing and Packing: Dry Red Chile and Other Spices." Accordingly, the Court determines as a matter of law that Cervantes Enterprises qualifies as an agricultural employer under the AWPA. *See Arredondo v. Delano Farms Co.,* 922 F. Supp. 2d 1071, 1075 (E.D. Cali. 2013) (under the AWPA "[t]he ultimate question of whether a defendant is an 'employer' is a legal question.")

employment analysis focuses on the relationship between the agricultural employer/association and the *worker*." *Arredondo*, 922 F. Supp. 2d at 1083 (emphasis in original). "If, as a matter of economic reality, a laborer is dependent upon the [farm labor contractor] and the agricultural employer, then a joint employment relationship exists, and the laborer will be considered an employee of both entities." *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1208 (11th Cir. 2003). But if two entities "are completely disassociated with respect to the employment of a particular employee, a joint employment situation does not exist." 29 C.F.R. § 500.20(h)(5). In determining the joint employment test, court looks to the following regulatory factors codified in § 500.20(h)(iv)(A)-(G):

> **(A)** Whether the agricultural employer/association has the power, either alone or through control of the farm labor contractor to direct, control, or supervise the worker(s) or the work performed (such control may be either direct or indirect, taking into account the nature of the work performed and a reasonable degree of contract performance oversight and coordination with third parties);
> **(B)** Whether the agricultural employer/association has the power, either alone or in addition to another employer, directly or indirectly, to hire or fire, modify the employment conditions, or determine the pay rates or the methods of wage payment for the worker(s);
> **(C)** The degree of permanency and duration of the relationship of the parties, in the context of the agricultural activity at issue;
> **(D)** The extent to which the services rendered by the worker(s) are repetitive, rote tasks requiring skills which are acquired with relatively little training;
> **(E)** Whether the activities performed by the worker(s) are an integral part of the overall business operation of the agricultural employer/association;
> **(F)** Whether the work is performed on the agricultural employer/association's premises, rather than on premises owned or controlled by another business entity; and
> **(G)** Whether the agricultural employer/association undertakes responsibilities in relation to the worker(s) which are commonly performed by employers, such as preparing and/or making payroll records, preparing and/or issuing pay checks, paying FICA taxes, providing workers' compensation insurance, providing field sanitation facilities, housing or transportation, or providing tools and equipment or materials required for the job (taking into account the amount of the investment).

Plaintiffs argue, in a footnote, that the Cervantes Defendants and WKI jointly employed them. As a consequence, Plaintiffs assert that the Cervantes Defendants are liable for every violation of the Act that WKI and Mr. Campos committed. However, Plaintiffs provided virtually no analysis of the factors bearing on the existence of a joint employment relationship, even though it was their burden to do so. *See Martinez-Mendoza*, 340 F.3d at 1209 ("[b]ecause the laborer has the burden of proof, to prevail he must establish the joint-employment inference by a preponderance of the evidence.") Plaintiffs did not even cite – let alone analyze – the seven regulatory factors enumerated above. Establishing a joint employment inference requires exposition and analysis. *See id.* 340 F.3d at 1207-15; *Arredondo*, 922 F. Supp. 2d at 1083-89; *Fanette v. Steven Davis Farms, LLC*, 28 F. Supp. 3d 1243, 1256-61 (N.D. Fla. 2014). In this case, because Plaintiffs inadequately briefed the joint employment issue, the Court is bereft of necessary facts, law, and argument needed to resolve whether the Cervantes Defendants are liable to Plaintiffs for WKI's alleged violations of the Act under that theory. The Court thus does not consider the Cervantes Defendants' liability under the joint employment doctrine.

## 2. Analysis

### a. *Plaintiffs' claim brought under 29 U.S.C. § 1821(f)*

Plaintiffs' first statutory claim, brought under 29 U.S.C. § 1821(f), imposes on agricultural employers certain disclosure requirements. It applies to each "farm labor contractor" and "agricultural employer" "which recruits any migrant agricultural worker" to "ascertain and disclose in writing to each such worker who is recruited for employment" certain information "at the time of the worker's recruitment." 29 U.S.C. § 1821(a). Section 1821 "was purposefully engineered to grant each and every worker an independent and individual right to receive a written ratification of all of the material terms and conditions of employment and to be

intelligibly and comprehensively appraised of his or her prospective working arrangements." *Villalobos v. North Carolina Grower's Ass'n Inc.,* 252 F. Supp. 2d 1, 9 (D.P.R. 2002) (citing *Bueno v. Mattner,* 829 F.2d 1380, 1384 (6th Cir.1987)). "[D]isclosure requirements cannot be satisfied by simply publishing or disseminating varying, inaccurate, and/or confusing terms and conditions, leaving the worker to guess which terms are applicable and correct." *Villalobos*, 252 F. Supp. 2d at 10. Required disclosures include information related to the place of employment, wages, crops and kinds of activities on which the worker may be employed, period of employment, and whether transportation, housing and any other employer sponsored benefits are provided. *See* § 1821(a)-(d). An agricultural employer that "knowingly" provides "false or misleading information" concerning these things is subject to liability. *Id.* § 1821(f).

The Cervantes Defendants' liability under this section depends on whether they "recruited" Plaintiffs. The definition of "recruit" is not defined by the Act or by binding precedent. However, the legislative history of the Act indicates that the term is given a broad reading, stating that "[t]he activity envisioned by the Committee" in defining the term "recruit" "runs the spectrum from the actual pre-employment discussion between the recruiter and the migrant worker to the filing of job orders with the interstate recruitment system." H.R. Rep. No. 885, at 13 (1982), *reprinted in* 1982 U.S.C.C.A.N. at 4559.

Citing this legislative history, courts have given the term recruit an expansive meaning to include "all pre-employment discussions relating to the employment and for the purposes of obtaining or otherwise securing the services of a migrant agricultural worker, which occur where the worker cannot readily observe the conditions of the employment." *Montalvo v. Larchmont Farms, Inc.*, Civ. No. 06-2701 (RBK/AMD), 2009 WL 4573279 *10 (D.N.J. Dec. 3, 2009). This includes indirect communication – that is, communication between farmers and workers that

takes place through a middleman. *See Escobar v. Baker*, 814 F. Supp. 1491, 1504 (W.D. Wash. 1993) ("'Recruiting' encompasses not only direct contacts with prospective workers but also indirect efforts to attract or solicit workers for agricultural employment.") Under this expansive reading of the term "recruit," the Court believes that the Cervantes Defendants "recruited" Plaintiffs, thereby making them subjects of the Act. Consequently, the Act imposes direct liability on the Cervantes Defendants for any alleged misleading disclosures made to Plaintiffs at the time WKI recruited them.

However, nothing in the record indicates that Plaintiffs were given misleading disclosures. All Plaintiffs, except allegedly for Plaintiff Enrique Rojas-Torres, received written job offers (ETA Form 790) from WKI. ETA Form 790 includes all the information that it must legally contain. For example, it provides information about the place of employment, the hourly wage, the job specification and duration, information regarding transportation and housing, the worksite locations, and whether workers' compensation is afforded. No record evidence suggests, nor do Plaintiffs argue, that these disclosures were misleading on their face. Thus, at the time of recruitment, Plaintiffs received accurate disclosures. This fact alone may be sufficient to award summary judgment to the Cervantes Defendants. *See Reyes v. Remington Hybrid Seed Co., Inc.,* 495 F.3d 403, 410 (7th Cir. 2007) (summary judgment granted on claim that defendant's violated AWPA's posting requirement where defendant "posted everything the law requires.")

Plaintiffs argue, however, that ETA Form 790 and its offer of jobs were illusory. In essence, Plaintiffs claim that by facilitating WKI's H-2A application, the Cervantes Defendants falsely promised to hire Plaintiffs, who were U.S. workers, and to pay them the H-2A wage. As support for Plaintiffs' contention that the Cervantes Defendants had no true intention of hiring

U.S. workers, Plaintiffs rely on a number of Mr. Cervantes's deposition statements in which he indicated that he thought the purpose of his partnership with WKI was to obtain foreign workers, and that he partnered with WKI for that purpose. Mr. Cervantes testified that he was unaware of the H-2A visa program's requirement that U.S. workers be recruited before foreign workers, and that unless Mr. Campos was "brining in foreign workers," he had no use for Mr. Campos's services, since he already employed farm labor contracts that could provide him domestic laborers. **[Doc. 206-1, p. 57, 31:13-18; 32:2-3]** Plaintiffs believe that this and similar statements by Mr. Cervantes are evidence that Mr. Cervantes misled them to believe they would be hired, which ultimately did not occur.

However, Mr. Cervantes's misunderstanding or ignorance about the H-2A program's conditions is not evidence that he provided Plaintiffs misleading written disclosures, which is what 29 U.S.C. § 1821 regulates. A review of the case law in this area indicates that § 1821 is violated when an employer, for example, fails to make disclosures entirely, *see Bueno v. Mattner*, 633 F.Supp.1446, 1464 (W.D. Mich. 1986), or misstates such disclosures, *see Washington v. Miller*, 721 F2d 797 (11th Cir. 1983). Here, Plaintiffs actually received accurate written disclosures regarding the terms of their employment, including accurate disclosures relating to pay, worksite location, transportation and housing, etc. Mr. Cervantes's statements that he partnered with WKI to employ foreign laborers – an event that is indeed contemplated by the H-2A program under certain conditions – does not imply that he misled Plaintiffs about the existence of jobs. Thus, there is no genuine issue of material fact regarding whether Plaintiffs received misleading disclosures.

Plaintiffs also allege that the Cervantes Defendants never truly planned to pay them the H-2A wage based on Mr. Cervantes's statement that he and Mr. Campos "never discussed"

wages during their meeting. **[Doc. 206-1, p. 15]** The Court is unpersuaded that Mr. Cervantes's statement that he and Mr. Campos "never discussed" wages is akin to concocting a plan to not pay those wages. Plaintiffs further suggest that since Mr. Cervantes never paid his workers more than $7.50 per hour, he had no intention of paying the H-2A wage of $9.71 per hour. But this suggestion is not supported by the record. In fact, the record citations Plaintiffs point to belie this suggestion, revealing instead that Mr. Cervantes would at times pay his farm labor contractor up to $9.50 per hour of labor. **[Doc. 206-1, p. 56, 29:13-15]** Accordingly, the Court determines that the evidence presented as to Mr. Cervantes's alleged intent to not pay the H-2A wage does not create a genuine issue of material fact that would allow a reasonable fact finder to conclude as such.

In sum, nothing in ETA Form 790 indicates that the disclosures were themselves misleading or illusory. Because there is no evidence giving rise to a genuine issue of material fact in support of Plaintiffs' theory that the Cervantes Defendants provided them false or misleading disclosures in contravention of 29 U.S.C. § 1821(f), the Court will therefore grant summary judgment in favor of the Cervantes Defendants on Plaintiffs' claims for breach of that provision.

### b. *Plaintiff Enrique Rojas-Torres's claim brought under 29 U.S.C. § 1821(g)*

Plaintiff Enrique Rojas-Torres individually brings a claim against the Cervantes Defendants for failing to provide him the written disclosures described above, and to provide those disclosures in his native language, Spanish. 29 U.S.C. § 1821(g) provides that "[t]he information required to be disclosed by [29 U.S.C. § 1821(a)-(c)] … shall be provided in written form. Such information shall be provided in English or as necessary and reasonable, in Spanish

or other language common to migrant agricultural workers who are not fluent or literate in English."

Summary judgment on this claim must be granted in favor of the Cervantes Defendants, because Plaintiffs provided no record evidence whatsoever that Mr. Rojas-Torres failed to receive disclosures in Spanish. There is no testimony from Mr. Rojas-Torres, nor any reference to discovery material, affidavits, declarations, or the like, to support this allegation. Because Plaintiffs presented no evidentiary support for Mr. Torres-Rojas's claim, summary judgment in favor of the Cervantes Defendants is granted.

### c. *Plaintiffs' claim brought under 29 U.S.C. § 1822*

29 U.S.C. § 1822(c) provides that "[n]o farm labor contractor, agricultural employer, … shall, without justification, violate the terms of any working arrangement made by that contractor, employer, or association with any migrant agricultural worker."

The Court must first examine whether the Cervantes Defendants properly sought summary judgment on this claim. In their motions, both Cervantes Enterprises and Cervantes Agribusiness failed to expressly identify Plaintiffs' claim under 29 U.S.C. § 1822 as one for which they expressly sought summary judgment. Plaintiffs even flagged this omission in their Response brief, but neither Cervantes Defendant took corrective action. Even though the Cervantes Defendants' briefs did seek summary judgment "as to all claims," the Court is concerned that this broad request may defeat Rule 56's requirement that the Cervantes Defendants spell out, or "identify" the exact relief sought. *See* Fed. R. Civ. P. 56.

The Court therefore provides the Cervantes Defendants leave to file a motion for summary judgment on Plaintiffs' claim brought under § 1822. If the Cervantes Defendants do not file a motion, the Court will assume that this claim remains active. The Cervantes

Defendants' filings shall be made jointly, and any motion is due within 14 days of entry of this Memorandum Opinion and Order.

### d. *Plaintiffs' claim brought under 29 U.S.C. § 1811*

29 U.S.C. § 1811 requires farm labor contractors and those that the contractor hire to obtain certificates of registration from the Department of Labor to carry out "farm labor contracting activity." By its plain terms, the statute's four provisions apply to farm labor contractors. *See* § 1811(a) ("No person shall engage in farm labor contracting activity…"); § 1811(b) ("A farm labor contractor shall not hire, employ, or use any individual to perform farm labor contracting activities …"); § 1811(c) ("Each registered farm labor contractor … shall carry at all times … a certificate of registration…"); § 1811(d) ("The facilities and services … shall be denied to any farm labor contractor upon refusal … to produce, … a certificate of registration.")

Plaintiffs allege that the Cervantes Defendants are directly liable under this provision for WKI's use of unregistered labor recruiters. However, the statute plainly applies to "farm labor contractors," which the Cervantes Defendants are not. *See Castillo v. Case Farms of Ohio, Inc.*, 96 F. Supp. 2d 578, 592 (W.D. Tex. 1999) ("[t]he AWPA … distinguish[es] between areas in which an agricultural employer can be found automatically liable for a farm contractor's action, and those instances in which it cannot.") In their Response brief, Plaintiffs shifted the statutory focus, claiming that the Cervantes Defendants violated another statutory provision by not verifying Mr. Campos's certificate of registration. *See* 29 U.S.C. § 1842 (stating that "[n]o person shall utilize the services of any farm labor contractor … unless the person first takes reasonable steps to determine that the farm labor contractor possesses a certificate of registration which is valid ….") Although this provision would appear to directly apply to the Cervantes Defendants, Plaintiffs did not plead this theory of liability in their Complaint, and the Court will

not consider it now. *See Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991) ("claim raised not in amended complaint but, rather, in plaintiff's response to defendant's motion for summary judgment was not properly before district court.") Because 29 U.S.C. § 1811 speaks to farm laborers rather than agricultural employers, the Court grants summary judgment on this claim in their favor.

### D. Plaintiffs' Fraud Claim

Under New Mexico law, a claim of fraud requires proof of: "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." *Williams v. Stewart*, 2005-NMCA-061, ¶ 34, 137 N.M. 420, 429, 112 P.3d 281, 290. Fraud must be established by clear and convincing evidence. *See Snell v. Cornehl*, 1970-NMSC-029, ¶ 7, 81 N.M. 248, 249, 466 P.2d 94, 95. The Court agrees with Plaintiffs that their claim for fraud does not require an analysis of whether WKI was acting in an agency capacity. *See Gouveia v. Citicorp Person-to-Person Fin. Ctr., Inc*. 1984-NMCA-079, ¶ 13, 101 N.M., 572, 577, 686 P.2d 262, 267 (stating that "[m]isrepresentations made indirectly to an injured party can serve as the basis for an action for fraud.")

Defendants argue that they are entitled to summary judgment on Plaintiffs' fraud claims because they never directly communicated any false or misleading information to Plaintiffs, nor did they have an agency relationship with WKI such that its statements would be attributable to the Cervantes Defendants. **[Doc. 185, p. 15; Doc. 186, p. 14]** Plaintiffs argue that because Dino Cervantes signed the Agreement of Outsourcing Support, which WKI needed to file its H-2A application, with the knowledge that it contained misrepresentations, this element is satisfied.

According to Plaintiffs, at the time Mr. Campos submitted the H-2A application, it contained the following misrepresentations: (1) the farmers lacked access to a sufficient number of U.S. workers; (2) the farmers promised to hire U.S. workers; and (3) the farmers never agreed to pay the H-2A wage. **[Doc. 206, p. 37]** According to Plaintiffs, since Mr. Cervantes signed the Agreement knowing it would be part of WKI's H-2A application, the Cervantes Defendants "knew or should have known that their action would cause" misrepresentations to be made to Plaintiffs. **[*Id.*]**

None of Plaintiffs' record citations lead to the conclusion, by clear and convincing evidence, that Mr. Cervantes made misrepresentations to Plaintiffs or that he knew of any such alleged misrepresentations. As to Plaintiffs' contention that Mr. Cervantes never agreed to pay the H-2A wage, suggesting this is evidence that he misrepresented to Plaintiffs the wage terms of their employment, the Court has already explained, *supra*, pp. 28-9, that Plaintiffs' record citations do not factually or legally support this contention. Turning to Plaintiffs' record support for their assertion that the Cervantes Defendants did not experience a domestic labor shortage, this evidence is culled from the testimony of Jesus Maldonado, a farm labor contractor employed by Mr. Cervantes, and not from testimony by Mr. Cervantes himself. It is therefore not evidence revealing Mr. Cervantes's knowledge. *See Gouveia,* 1984-NMCA-079, ¶ 13 (defendant is liable for fraud based on his own "actual knowledge" of misrepresentation).

Mr. Cervantes never testified that he "hired WKI specifically to access Mexican workers," as Plaintiffs assert. Rather, he testified that Mr. Campos's business proposal "interested" him because it involved acquiring foreign laborers. Mr. Cervantes's interest in a federal work visa program that indeed envisions employing foreign laborers under certain circumstances is not evidence of a misrepresentation of fact made to Plaintiffs regarding the

existence of jobs. For fraud to be actionable, New Mexico law requires a real misrepresentation of fact – for example, a contractor's statement to a homeowner that a certain land use is permitted when he knows it is prohibited. *See Kaveny v. MDA Enterprises, Inc.*, 2005-NMCA-118, ¶ 11, 138 N.M. 432, 435, 120 P.3d 854. Beyond pointing to Mr. Cervantes's deposition statements that he was interested in partnering with WKI to participate in a federal work visa program, Plaintiffs submitted no material evidence suggesting that Mr. Cervantes misrepresented that he would hire or pay Plaintiffs.

Because Plaintiffs have failed to show that the Cervantes Defendants misrepresented information, the Court need not examine whether Plaintiffs can prove the other elements of fraud. *See Sauter v. St. Michael's College*, 1962-NMSC-107, ¶ 9, 70 N.M. 380, 385, 374 P.2d 134, 138 (to prevail on fraud claim plaintiff must show that each element of the claim is satisfied). Thus, the Court will grant summary judgment in favor of the Cervantes Defendants on Plaintiffs' fraud claim.

### E. **Plaintiffs' Conspiracy Claim**

To prevail on a claim for civil conspiracy, Plaintiffs must show: "(1) that a conspiracy between two or more individuals existed[,] (2) that specific wrongful acts were carried out by [Defendants] pursuant to the conspiracy[,] and (3) that [Plaintiffs were] damaged as a result of such acts." *Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 28, 142 N.M. 209, 217, 164 P.3d 90, 98. P.3d 440. "A civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability unless a civil action in damages would lie against one of the conspirators. A civil conspiracy must actually involve an independent, unlawful act that causes harm—something that would give rise to a civil action on its own." *Ettenson v. Burke*, 2001-NMCA-003, ¶ 12, 130 N.M. 67, 72, 17 P.3d 440, 446. Thus, a plaintiff

"cannot recover on a claim for civil conspiracy unless [the plaintiff] can recover against at least one of the conspirators for a specific wrongful act beyond the conspiracy itself." *Cain,* 2007-NMCA-085, ¶ 28. "[A] conspiracy claim fails as a matter of law when no actionable civil case exists against the defendants." *Vigil v. Public Service Co. of N.M.*, 2004-NMCA-085, ¶ 20, 136 N.M. 70, 74, 94 P.3d 813 817.

The Cervantes Defendants argue that there is no genuine dispute concerning their liability to Plaintiffs for conspiring with WKI and the other defendants to evade the requirements of the H-2A visa program. Cervantes Enterprises argues that Mr. Campos erroneously listed Cervantes Enterprises' address as a worksite location as part of its H-2A application, but that this erroneous designation should not be construed as a contract between it and Plaintiffs that Cervantes Enterprises attempted to evade. **[Doc. 186, pp. 16-17]** Both Cervantes Defendants argue that they had no communications with any of the other grower defendants, and that they never assisted or participated in WKI's H-2A application filing.[4] **[Doc. 185, pp. 17-18; Doc. 186, pp. 15-16]**

Plaintiffs argue that Mr. Campos's defrauding of Plaintiffs about the existence of jobs is attributable to the Cervantes Defendants in a coconspirator capacity. **[Doc. 206, pp. 42-43]** Plaintiffs also argue that the Cervantes Defendants and WKI conspired to evade the H-2A program's requirements that U.S. workers be given employment priority over foreign workers. Plaintiffs believe that the Cervantes Defendants had no rational business reason to partner with WKI, an untested business and without its own assets, unless the reward was to acquire foreign

---

[4] The Cervantes Defendants contend that Plaintiffs should be sanctioned under Fed. R. Civ. P. 11 for pleading their civil conspiracy claim because it supposedly lacks evidentiary support. Because this request is meritless, and because the Cervantes Defendants did not follow the 21-day "safe harbor" rule, the Cervantes Defendants' request for sanctions is denied. *See Mellott v. MSN Communications, Inc.*, 492 Fed. Appx. 887, 888 (10th Cir. 2012) ("the 'safe-harbor' provision of Rule 11(c)(2) requires a party to serve a copy of its Rule 11 motion on the other party and to give that party an opportunity (generally 21 days) to withdraw or correct the challenged document before filing the sanctions motion with the court.")

laborers. **[Doc. 206, pp. 44-45]** Plaintiffs also allege that despite WKI's pledge in its H-2A application to hire U.S. workers over foreign workers, Mr. Cervantes contradicted this by stating that he partnered with WKI to obtain foreign H-2A workers, and that the Agreement of Outsourcing Support signed by Mr. Cervantes and Mr. Campos is deliberately vague, suggesting that these facts are further evidence of WKI's and the Cervantes Defendants' attempts to evade the H-2A program's requirements. **[*Id.*]** Finally, Plaintiffs contend that Mr. Campos took "an overt act in furtherance of the conspiracy" by filing the H-2A application that listed Cervantes Enterprises' address as a worksite location. **[Doc. 206, p. 47]**

The Court need not reach the question of whether Plaintiffs have presented sufficient facts to show that a conspiracy existed. In light of the Court's holding that no genuine issues of material fact support their breach of contract, AWPA, and fraud claims, Plaintiffs civil conspiracy claims fail as a matter of law. *See Vigil,* 2004-NMCA-085, ¶ 20. Thus the Court grants summary judgment in the Cervantes' Defendants favor on Plaintiffs' civil conspiracy claim.

**IT IS THEREFORE ORDERED** that

1. Defendant Cervantes Agribusiness' Motion for Summary Judgment **[Doc. 185]** is **GRANTED**.

2. Defendant Cervantes Enterprises' Motion for Summary Judgment **[Doc. 186]** is **GRANTED**.

3. The Cervantes Defendants' Motion for Partial Summary Judgment **[Doc. 208]** is **GRANTED**.

**IT IS ALSO ORDERDED** that the Cervantes Defendants shall have leave to file a motion for summary judgment on Plaintiffs' claim brought under 29 U.S.C. § 1822. If the Cervantes Defendants do not file a motion, the Court will assume that this claim remains active. The Cervantes Defendants' filings shall be made jointly, and any motion for summary judgment is due within **14 days** of entry of this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT COURT JUDGE