# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| ESTEBAN ALFARO-HUITRON, *et al*., | § | |
|     Plaintiffs, | § | |
| | § | No. 2:15-cv-210 JCH/WPL |
| v. | § | |
| | § | Civil Action |
| WKI OUTSOURCING SOLUTIONS, LLC, | § | |
| *et al*., | § | |
|     Defendants. | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS CERVANTES AGRIBUSINESS AND CERVANTES ENTERPRISES, INC.'S JOINT MOTION FOR SUMMARY JUDGMENT [DOC. 233]

Defendants Cervantes Agribusiness (CAB) and Cervantes Enterprises, Inc. (CEI) seek summary judgment that neither is liable under 29 U.S.C. § 1822. Doc. 233. Plaintiffs[1] resist their motions as follows:

## ISSUES FOR DECISION

Whether the record viewed in the light most favorable to Plaintiffs shows a genuine dispute as to the following facts:

(1) CAB and CEI (hereafter, CAB/CEI – both Agricultural Employers – were joint employers (along with other defendants) of Plaintiffs under the terms of the clearance order pursuant to the standards set out in the Agricultural Worker Protection Act (AWPA) and the Fair Labor Standards Act (FLSA); and

_____

[1] The nine Plaintiffs who assert claims against CAB and CEI are: Esteban Alfaro-Huitron, Eleazar Garcia-Mata, Jose Antonio Garcia-Mata, Juan Guzman, Raul Jasso-Cerda, Enrique Rojas-Torres, Lazaro Rojas-Torres, Trinidad Santoyo-Garcia, and Pedro Tamez. Doc. 103 at ¶ 72.

(2) If CAB and CEI were joint employers, whether they breached the "working arrangement" established with Plaintiffs under 29 U.S.C. § 1822.

## STATEMENT OF MATERIAL FACTS

Per D.N.M. Loc. R. 56.1(b), Plaintiffs letter their presentation of material facts and number their disputes with Defendants' assertions of fact. All reasonable inferences from the cited evidence are to be made in Plaintiffs' favor. *Foster v. Allied Signal, Inc*., 293 F.3d 1187, 1192 (10th Cir. 2002).

### Disputes of Material Facts Made by CAB/CEI

1-CAB/CEI: CAB/CEI cites no evidence from the record to establish this legal conclusion. Additionally, as explained in, *infra,* Section I, the agency relationship between CAB/CEI and WKI is irrelevant to the question of joint employment.

2-CAB/CEI: As explained in, *infra,* Section I, facts exist in the record that CAB/CEI had a right to control field workers who are recruited and hired by WKI.

3-CAB/CEI: As explained in, *infra,* Section II, the desire to "benefit" Plaintiffs is irrelevant to whether CAB/CEI breached its working arrangement with Plaintiffs – as outlined in the Clearance Order submitted by WKI on CAB/CEI's behalf.

4-CAB/CEI: As explained in, *infra,* Section II, CAB/CEI's liability under contract or agency theories are inapplicable to a determination of whether CAB/CEI violated the working arrangement with Plaintiffs.

### Material Facts Omitted from Defendants' Motion.

A. Federal "H2A" law permits foreign agricultural guest workers into the United States only if: (1) an insufficient number of U.S. workers accept the jobs after being offered the jobs ahead of foreign workers; and (2) the "adverse effect wage rate" (AEWR, which was $9.71 per

2

hour for New Mexico during 2011) is paid to all U.S. and foreign workers who accept the jobs. 8 U.S.C. § 1101(a)(15)(H)(ii)(A); *id.* at § 1188(a)(1); 20 C.F.R. § 655.122(a).

B.   Defendant Jaime Campos believed that Southern New Mexico growers were dissatisfied with the quality of the U.S. workers who they could attract to perform difficult seasonal field labor, which led him to incorporate WKI in December 2009.  SJR 3-5.

C.   WKI prepared a one-page form "Agreement of Outsourcing Support" (AOS) that it signed with Southern New Mexico growers to meet the requirements of 20 C.F.R. § 655.132. SJR 6; 123.

D.   WKI had no capital on hand.  SJR 12-13.

E.   Dino Cervantes signed WKI's form AOS on September 10, 2011.  SJR 26; 123. When Dino Cervantes signed the AOS, Dino Cervantes knew that Jaime Campos would use the AOS to apply for H2A workers, and that federal law required the AOS as part of WKI's H2A application.  SJR 18-19; 24-26; *see also* 20 C.F.R. § 655.132(a)-(b)(4) ("work contracts" from "fixed-site employers" are required in order to submit an H2A application).  The agreement confirmed that WKI would recruit 15 workers on Cervantes' behalf to work from November 10, 2011 to March 9, 2012.  SJR 123.

F.   The Court has already determined that there is a material fact issue as to whether Dino Cervantes signed the form AOS with WKI on behalf of CAB, CEI, or both for purposes of recruiting agricultural workers in the fall of 2011.  [Doc. 232, p. 12 fn2].

G.   CAB/CEI grow and distribute chile crops. SJR 23; 27-28; 115-17. Cervantes is the "owner of the ranch" where field workers provide labor for CAB/CEI.  SJR 38-40; 48.

H.   Ronald Franzoy owns and manages Former Defendant RJF Farms, Inc.  SJR 114. Mr. Campos and Ronald Franzoy discussed WKI's plan to import Mexican H2A workers many

times, a plan that Ronald Franzoy enthusiastically supported.  SJR 7; 55-58.

I.  On September 29, 2011, Mr. Campos used the AOS signed by CAB/CEI to petition for H2A workers who would perform labor at "fixed-site employers" including CAB/CEI and RJF farms.  SJR 9; 125-34.

J.  To petition for these H2A workers, WKI representatives swore under penalty of perjury that no qualifications would be necessary to be hired for these jobs, all willing U.S. workers would be hired for the jobs prior to hiring any Mexican workers, and the pay to all U.S. and Mexican workers would be the AEWR of $9.71 per hour.  SJR 12; 65-66; 125-34; 141-158. These promises were required by federal law to apply for H2A workers.  *Posadas de Puerto Rico Associates, Inc. v. Sec'y of Labor of U.S.*, 698 F. Supp. 396, 398 (D.P.R. 1988).

K.  WKI hired each Plaintiff on the following terms: no qualifications required, pay at the AEWR for New Mexico of $9.71 per hour, 35 hours per week, work between November 28, 2011 and March 9, 2012, and free housing and transportation to the worksite each day.  SJR 135-58; 161-68.  They were also promised employment for a minimum of ¾ of the days in the specified period in the contract.  SJR 152.  All of these promises were made in a document submitted to the U.S. Department of Labor (U.S. DOL) in a document called the Clearance Order.  SJR 141-58.

L.  Under the Clearance Order, WKI would be paid by Cervantes and other growers by making $1 per hour on top of the prevailing wage established by federal law.  SJR 10-11.

N.  Under the terms of the Clearance Order, WKI was to recruit farm laborers for Cervantes' companies.  SJR 123; 141-158.  Once those workers were in the fields, CAB/CEI would control who works on their farms and tell field workers how to do their work.  SJR 12-13; 14.

4

O.   Once WKI recruited workers for CAB/CEI, Cervantes planned on treating WKI's workers the same as any other field worker that CAB/CEI regularly hires between November and March of every year.  SJR 29-30.

P.   CAB/CEI regularly maintains one farm labor contractor between November and March of each year – Jesus Maldonado. SJR 36; 37.

Q. When Cervantes is ready for Maldonado to work each year for CAB/CEI, he calls Maldonado and tells him which field he wants Maldonado's crew to work on a specific day.  SJR 34.  In addition, Cervantes is provides direct orders to Maldonado regarding the number of workers he needs.  *Id.*

R.  Cervantes and his office are aware of how much all of CAB/CEI's field workers make on a given day.  SJR 29-30.  CAB/CEI also tracks and deducts FICA taxes for field workers who labor under Maldonado.  SJR 42-44.

S.   Cervantes changes the amount paid to Maldonado when the total amount per hour changes.  SJR 41.

T.  Maldonado is unable to pay workers until he receives his own payroll check from CAB/CEI.  SJR 45.

U. Plaintiffs were all offered employment under the Clearance Order from WKI and accepted the terms of this working arrangement.  SJR 71-73; 78-81; 83-85; 87-88; 90-92; 94; 96-98; 100-01.

V. WKI and CAB/CEI failed to provide any employment to Plaintiffs between November 2011 and March 2012 because they cancelled the Clearance Order.  SJR 159-60.  Mr. Campos blamed the cancellation on an alleged drought.  *Id.*

5

W.  Ronald Franzoy described Mr. Campos's drought claim as follows:

That's a bunch of kahooey.  The reason that he [cancelled the H2A application is] because he wasn't able to get the people from Mexico in our agreement.  It had nothing to do with adverse [weather] conditions.  I had chile to pick that year, and I could have used the help and the labor.

SJR 59-60.

X.  Neither WKI nor CAB provided any work to Plaintiffs during the period for which Plaintiffs were hired pursuant to the terms of WKI's H2A contract.  SJR 161-68.

## STANDARD OF REVIEW

A motion for summary judgment must be denied if reasonable people may reach different conclusions as to a claim or defense.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not a time to determine whether the evidence can be proven by a preponderance of the evidence – that determination is left for the jury.  Rather, summary judgment "should not be entered unless the movant has established its right to a judgment with such clarity as to leave no room for controversy and unless the other party is not entitled to recover under any discernible circumstances."  *Teleconnect v. Ensrud*, 55 F.3d 357, 359 (8th Cir. 1995).  The moving party bears the burden of showing that no genuine issue of material fact exists. *Zamora v. Elite Logistics, Inc.,* 449 F.3d 1106, 1112 (10th Cir. 2006).[2]  The Court must draw all reasonable inferences in favor of the non-moving party.  *Id.*  The nonmoving party may draw upon inferences from circumstantial evidence.  *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1155-56 (10th Cir. 2008); *Ortiz v. Norton*, 254 F.3d 889, 893 (10th Cir. 2001).

---

[2] CAB/CEI fails to provide the court with any specific facts to support their motion for summary judgment.  Rather, they rely solely on the Court's legal analysis of Plaintiffs' contract and agency arguments. [Doc. 233, p. 3].   On this basis alone, because CAB/CEI has failed to produce any facts from the record, the Court should deny their motion for summary judgment.

**ARGUMENT**

The premise of CAB/CEI's summary judgment motion is incorrect – the Court's determination of CAB/CEI's relationship to Plaintiffs under agency or contract principles does not bear on the question of CAB/CEI's liability under 29 U.S.C. § 1822. Instead, settled law establishes that the § 1822 claim turns on whether CAB/CEI was a joint employer of Plaintiffs under the Clearance Order under the much broader standard set by the AWPA and the FLSA; and, if so, that they breached the working arrangement with those Plaintiffs. Under this standard, CAB/CEI's simple reliance on the Court's previous order is insufficient. In fact, there are genuine issues of material fact to whether CAB/CEI was a joint employer and whether CAB/CEI – as a joint employer – breached the working arrangement with Plaintiffs. For these reasons, Plaintiffs respectfully request that the Court deny CAB/CEI's motion for summary judgment as to liability under the AWPA.

**I.      CAB/CEI WAS A JOINT EMPLOYER OF PLAINTIFFS UNDER THE TERMS OF THE CLEARANCE ORDER PROVIDED TO PLAINTIFFS IN 2011 FOR WORK ON CAB/CEI'S FARM.**

**A.      LEGAL STANDARD FOR JOINT EMPLOYMENT STATUS UNDER THE AWPA.**

As a preliminary matter, the Court has already decided that there is a genuine issue of material fact as to whether CAB and CEI – jointly – entered into an agreement with WKI for purposes of recruiting agricultural workers in the fall of 2011 through the Clearance Order. [Doc. 232, p. p. 12 fn 2]. The Court has also decided, as a matter of law, that both CAB and CEI are agricultural employers as defined under 29 U.S.C. § 1802. [Doc. 232, p. 23 fn3].

The Court's previous determination regarding agency is not determinative of CAB/CEI's liability under a broader joint employment theory under the AWPA as CAB/CEI suggest in their

motion. [Doc. 233, p. 5].[3]   On the contrary, AWPA joint employment is a much more expansive standard than common-law agency or contract principles.

The FLSA and AWPA use a multi-factored standard to establish joint liability.   As the Court correctly states, the AWPA uses the same definition of "employ" as the FLSA – whether an employer "suffer[ed] or permit[ted] an employee to work."   [Doc. 232, p. 23-24] (internal citations omitted).   This definition of employment under the AWPA, like the FLSA, includes joint employment which, "stretch[es] the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Salinas v. Commercial Interiors, Inc.,* 848 F.3d 125, 136 (4th Cir. 2017) (citing *Nationwide Mut. Insurance Co. v. Darden,* 503 U.S. 318, 326 (1992)).[4]

The AWPA's definition of employment is to be interpreted broadly in order to avoid the danger that growers could hide behind middlemen who do the bulk of their recruiting and supervision.

> In 1982, Congress repealed the FLCRA and replaced it with the AWPA. While the AWPA is similar to the FLCRA, it is different in one critical respect: "The AWPA corrects the key weakness of the FLCRA, which held only the farm labor contractor responsible for such abuses and shielded the employer unless he fell within the narrow definition of 'farm labor contractor' under the [FLCRA]." 128 Cong.Rec. 32,883 (1982) (Statement of Rep. Ford).

---

[3] CAB/CEI also incorrectly alleges that the Court "rejected" CAB/CEI's liability under the AWPA under a joint employment theory. [Doc. 233, p. 7].  In fact, the Court stated that it would "not consider the Cervantes Defendants' liability under the joint employment doctrine" as it pertained to the claims addressed in previous summary judgment motions. [Doc. 232, p. 25]. The Court left open Plaintiff's right to establish its joint employment analysis for this separate motion on a claim not addressed in its previous summary judgment order.

[4] *See also Antenor v. D & S Farms,* 88 F.3d 925, 929 (11th Cir. 1996) ("in defining 'employment' under [the FLSA and AWPA], Congress expressly rejected the common-law definition of employment which is based on limiting concepts of control and supervision.").

> The legislative history of the AWPA makes it clear that Congress intended to have growers ensure compliance with the AWPA. "Agricultural employers ... will for the first time be sure of their duties to migrant workers. Agricultural employees will in turn, know who is responsible for their protections, by fixing responsibility on those who ultimately benefit from their labors—the agricultural employer." 128 Cong.Rec. 26,008 (1982) (Statement of Rep. Miller).

*Torres-Lopez v. May*, 111 F.3d 633, 638-39 (9th Cir. 1997).[5]

The application of joint employment in the agricultural context – which is often fractured by contractor chains in which workers often do not know for whom they are laboring – has been plagued by "perceived misconceptions" that shielded agricultural employers. *Fanette v. Steven Davis Farms, LLC,* 28 F.Supp. 3d 1243, 1258 (N.D. Fla. 2014). For that reason, the U.S. DOL promulgated regulations – adopted in 1997 – to provide specific guidance regarding whether joint employment exists. *Id.* As a result, 29 C.F.R. § 500.20(h)(5)(iv)(A-G).established several factors – which are not exhaustive – to help determine whether sufficient economic dependency exists between the employee and the employer. These factors include whether:

- The employer has the power through the control of a farm labor contractor to direct, control or supervise the worker – even if the control is indirect;

- The employer has the power, directly or indirectly, to hire, fire, modify the employment conditions of, or determine method or amount of wage payment;

- The degree of permanency and duration of the relationship of the parties;

- The extent to which services rendered are repetitive, rote tasks requiring skills with little training;

---

[5] *See also Antenor,* 88 F.3d at 930 ("Congress' plain intent [in passing the AWPA] was to protect migrant and seasonal workers from abuse and exploitation, and to hold agricultural employers fully accountable as joint employers whenever the facts suggest that liability is fairly imposed.") (internal citations omitted); *and Caro-Galvan v. Curtis Richardson, Inc.,* 993 F.2d 1500, 1505 (11th Cir. 1993) ("[b]road construction of the [AWPA] comports with [its] humanitarian purpose to protect all those hired by middlemen to toil in our nation's fields, vineyards and orchards") (internal citation omitted).

- The activities are an integral part of the business operation of the agricultural employer;

- The work is performed on the agricultural employer's premises, rather than the premises owned by another business entity; and

- The agricultural employer has responsibilities related to workers commonly performed by employers – including segregation and payment of FICA taxes.

29 C.F.R. § 500.20(h)(5)(iv)(A-G).

No one factor is determinative. *Antenor,* 88 F.3d at 932-33. The absence of evidence on any one factor does not preclude a finding of joint employment.[6] Instead, factors are to be used as tools to evaluate an employment relationship with the weight given to each factor on the degree to which it "sheds light on the workers' economic dependence (or lack thereof) on the putative employer." *Id.* Unless the acknowledged employer is completely disassociated from the putative employer and exercises absolute, unfettered and sole control over the workers, there is likely a joint employment relationship. *See* 29 C.F.R. § 791.2(a); *Aimable v. Long & Scott Farms, Inc.,* 20 F.3d 434, 440-41 (11th Cir. 1994).

To determine whether an employment relationship exists – particularly when dealing with a working arrangement that was breached at the outset of the hiring process – the Court may consider not just the relationship that the employer had with the plaintiff-employees, but how the employer usually treats seasonal workers and farm labor contractors. *Rodriguez v. SGLC, Inc.,* No. 2:08-cv-01971-MCE, 2012 WL 5704403, at *7-8 (E.D. Cal. Nov. 15, 2012) (analyzing

---

[6] "A score of 5 to 3 decides a baseball game" but does not decide whether two entities constitute joint employers. *Reyes v. Remington Hybrid Seet Co.,* 495 F.3d 403, 407 (7th Cir. 2007). "[O]ne factor alone can serve as the basis for finding that two or more persons or entities are "not completely disassociated" with respect to a worker's employment if the facts supporting that factor demonstrate that the person or entity has a substantial role in determining the essential terms and conditions of a worker's employment." *Salinas v. Commercial Interiors, Inc.,* 848 F.3d 125, 142 (4th Cir. 2017) (citing 29 C.F.R. § 791.2(a)).

evidence of how an employer customarily treats seasonal workers to assess the AWPA joint employment factors despite the employer's claims that the plaintiffs in this case did not actually perform work for him during the same season).

B.      CAB/CEI WAS A JOINT EMPLOYER OF PLAINTIFFS UNDER THE AWPA.

In this case, there exists a genuine dispute of material fact as to each of the regulatory factors. For these reasons, the Court should deny Defendants' motion for summary judgment.

   1.   *CAB/CEI had the direct and/or indirect power through the control of a farm labor contractor to direct, control or supervise Plaintiffs.*

The control factor is the least connected to the ultimate question of economic dependence. After all, the "suffer or permit to work" standard was developed in large part to assign responsibility to businesses which did *not* directly supervise the activities of putative employees. *Antenor,* 88 F.3d at 934. Nonetheless, the record in this case is replete with genuine disputes of material fact as to the control that CAB/CEI had over Campos' workers through the Clearance Order and the control that he customarily had over his labor in the winter season.

According to one of his contractors, Jesus Maldonado, Dino Cervantes was in charge of hiring farm labor contractors and their crews to do field work in 2011 for CAB/CEI. SJR 38-40. In this capacity, he exercised considerable control over the hiring and employment of his harvest and planting workers in 2011 and 2012.

Cervantes' control is first established through his interactions with Jaime Campos and WKI. Cervantes entered into agreement with Campos to hire H-2A workers. The agreement confirmed that WKI would recruit 15 workers on Cervantes behalf to work from November 10, 2011 to March 9, 2012. SJR 123. Campos was hired on Cervantes' behalf to hire workers in the same fashion as any other farm labor contractor. Under this agreement, it was Campos'

11

testimony that the farms on the Clearance Order – including CAB/CEI – would control who works on their farms.  SJR 12-13.  Under this agreement, Cervantes would do his business and instruct workers in the fields.  SJR 14.

Second, control may be determined by evidence related to CAB/CEI's customary control of farm laborers and their contractors in the same annual November to March time period.  It is undisputed that, once Campos recruited workers for CAB/CEI, Cervantes planned on treating Campos and the workers recruited by Campos the same as any other provider of "contract labor" during the season.  SJR 29-30.  Therefore, it is relevant – in analyzing the joint employment factors – to assess how CAB/CEI generally treats its field workers in a given season.  *SGLC, Inc.,* 2012 WL 5704403, at *7-8.  The evidence establishes a stark issue of material fact regarding CAB/CEI's customary control over his farm labor.

CAB/CEI regularly had only one farm labor contractor working for them between November and March of each year – Jesus Maldonado. SJR 36 (provides workers to pick pecans and red chile between November and January); 37 ("it's been many years now that there is no other employees, only the ones I bring").  Maldonado's testimony regarding the nature of his relationship with CAB/CEI during the winter months shows that CAB/CEI exercises considerable control over contract workers that are similarly situated to Plaintiffs had Plaintiffs actually worked for CAB/CEI through Campos in the fall of 2011.

Control is determined when a grower decides which fields will be harvested and the date on which fields will be harvested.  *Charles v. Burton,* 169 F.3d 1322, 1330 (11th Cir. 1999); *Fanette,* 28 F.Supp. 3d at 1243.  According to Maldonado, when Cervantes is ready for him to work, he calls Maldonado and tells him which field he wants Maldonado's crew to work on a specific day.  SJR 34.  "When [Cervantes] says it's going to be [a particular day], that's because

it's going to be that day . . ." SJR 35.  In addition, Cervantes provides direct orders to Maldonado regarding the number of workers he needs.  *Id.* ("If [Cervantes] tells me to bring 50, then I bring 50.").

Finally, CAB/CEI's insistence that Plaintiffs had little to no contact with CAB/CEI may be relevant to an agency determination – but carries "little weight" in a joint employment determination.  *Salinas,* 848 F.3d at 148 ("we also give little weight to the fact that Commercial's foremen generally spoke to J.I.'s supervisors and did not speak to Plaintiffs directly").

In sum, there are numerous fact disputes regarding CAB/CEI's control over the field workers that it recruits through farm labor contractors – including Plaintiffs in 2011.

2. *CAB/CEI had the power, directly or indirectly, to hire, fire, modify the employment conditions of, or determine method or amount of wage payment of Plaintiffs.*

The second factor analyzes whether the grower had the power (not necessarily whether that power was exercised) to indirectly hire or fire employees <u>or</u> to modify and determine the method or amount of wage payment of Plaintiffs.  *Antenor,* 88 F.3d at 935.

Here, as the Court correctly states in its initial order on Summary Judgment, under the terms of the Clearance Order and federal law, neither WKI nor CAB/CEI had a right to vet the quality or skills of the workers.  [Doc. 232, p 18].  Nonetheless, Cervantes himself testifies that, once workers are hired, he would be able to vet the quality of work performed by field workers on his field.  SJR 180 ("If somebody didn't harvest chile to quality standards, I'll tell the contractor that he didn't do good job.").  As stated above, he also controlled which fields they would work on in any given day.  SJR 34-35.

There are also a myriad of stark fact issues as to whether Cervantes controls the method or amount of wages to his farm labor contractors.  A grower controls method and amount of

13

wages when he decides whether he will compensate workers by piece meal or hourly. *Fanette,* 28 F.Supp. 3d at 1260. Here, for hourly workers, Cervantes customarily pays Maldonado a certain amount per worker hour with the understanding that workers would make minimum wage and Maldonado would make a certain amount of cents above that. SJR 184-86; 42-44. Cervantes was responsible when the wages would change. SJR 41.

Campos was to be paid the same way. Under the Clearance Order, he would be paid by Cervantes and other growers by making $1 per hour on top of the prevailing wage established by federal law. SJR 10-11.

Cervantes and his office are continuously aware of how much all field workers make on a given day. SJR 46-47 (Maldonado testifies that Cervantes "is always on top, anyway, of the lists and knows what each [of my workers] is making. He has to know."). Cervantes' office also tracks FICA taxes for field workers who labor under Maldonado. SJR 42-44.[7]

Therefore, fact issues exist as to CAB/CEI's ability to both vet their field workers on the job and to determine and change method and amount of wages that they receive.

3. *The degree of permanency and duration of the relationship of the parties.*

CAB/CEI's agreement with Campos obligated Campos to have 15 workers ready for a fixed period of time. SJR 123. For the November to March season, CAB/CEI had established a permanent relationship with the workers who were to be hired by Campos and those workers were to be available to CAB/CEI "at its discretion." *Charles v. Burton,* 169 F.3d 1322, 1332 fn12 (11th Cir. 1999) (citing AWPA, 62 Fed.Reg. at 11,740). Therefore, on the basis of the AOS

---

[7] The fact that a grower pays a lump sum to a contractor who then pays out of the lump sum is not preclusive of the grower's joint employer status. *Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1322 (5th Cir. 1985).

and Clearance Order alone, the record establishes a genuine issue of fact as to the weight of this

factor in favor of a finding of a joint employment relationship.

4. *Plaintiffs' services that would have been rendered by CAB/CEI under the Clearance Order are repetitive, rote tasks.*

It is an indicator of employment status if the services provided (or to be provided) by

employees are rote so as to require less direct supervision.  *Fanette,* 28 F.Supp. 3d at 1260.

Here, it is undisputed that the work that would have been provided by Plaintiffs for CAB/CEI –

harvesting and planting of crops – would have been repetitive and rote.  SJR 142.  *See also*

*Charles v. Burton,* 169 F.3d at 1332 (finding that it is "unquestionable" that hand-picking crops

is "repetitive and rote.").[8]  Therefore, this factor weighs heavily in favor of a finding of a joint

employment relationship.

5. *Plaintiffs' services under the Clearance Order are an integral part of CAB/CEI's business operation.*

CAB/CEI grow and distribute chile crops. SJR 23; 27-28; 115-17.  Plaintiffs and other

workers hired under the Clearance Order would have been harvesting red chile for CAB/CEI

under the terms of the Clearance Order.  SJR 125-34.  As such, there is no dispute that the facts

support that Plaintiffs' services under the Clearance Order would have been an integral part of

CAB/CEI's business operation.

6. *Plaintiffs' services under the Clearance Order for CAB/CEI would have been performed on CAB/CEI's premises.*

The fact that an entity owns or controls the land upon which the workers would be

working is probative of joint employment. *Antenor v. D & S Farms,* 88 F.3d 925, 937 (11th Cir.

---

[8] *See also Antunez v. G & C Farms, Inc.,* 1993 WL 451344 at *5 (D.N.M. Aug. 9, 1993) ("the harvesting of red chile is a simple task sometimes performed by children.").

1996).  Cervantes' 40 year farm labor contractor stated that Cervantes is the "owner of the ranch" where they work.  SJR 38; 48.  Nothing in the record disputes this fact.  Therefore, there is no dispute that this factor weighs in favor of CAB/CEI's finding of a joint employment relationship.

7. *CAB/CEI's responsibilities as to its field workers are related to workers commonly performed by employers.*

Finally, CAB/CEI customarily had responsibilities related to workers commonly performed by employers.  As Campos stated, CAB/CEI and other growers on the Clearance Order would use his company as HR so that CAB/CEI could instruct the workers on the work to be performed – a principal responsibility of employers.  SJR 14.

In addition, if an employer is involved in the preparation of payroll and payment of wages along with a contractor, this weighs heavily in favor of joint employment because "of the likelihood that when a business undertakes to help an independent contractor prepare its payroll . . . it is likely that the contractor lacks economic substance on which the workers can solely depend.  *Antenor* 88 F.3d at 936.  Here, CAB/CEI traditionally handles a portion of bookkeeping for its farm labor contractors – including the segregation of FICA and other relevant payroll taxes.  Maldonado makes clear that, during every pay period, CAB/CEI's secretary provides him with a breakdown of worker hours, SJR 42-43.  Cervantes retains the amount of pay for social security and unemployment for each worker on behalf of his contractors.  *Id*.

Therefore, the record establishes a genuine issue of material fact as to whether CAB/CEI maintains responsibility vis-à-vis its field workers commonly performed by employers.

8. *Other relevant factors weigh toward a finding of joint employment for CAB/CEI.*

Though not a regulatory factor, courts also looked at the economic independence of the farm labor contractor in determining whether field workers are dependent on a grower instead of

the farm labor contractor who directly hired them.  *Beliz,* 765 F.2d at 1328 (finding that whether

a middleman contractor has no capital or means of profit independent of the defendant grower

favors a finding of joint employment)*; Antunez,* 1993 WL 451344 at *5.  Here, there is no

question that field workers – as well as CAB/CEI's farm labor contractors –  were completely

dependent on CAB/CEI's payments for harvesting work performed on CAB/CEI's fields.  SJR

13 (WKI had no capital on hand would rely only on its contract with farms to pay workers); SJR

45 (Maldonado unable to pay workers until receives his payroll check from CAB/CEI).

Therefore, during any payroll period, because these farm labor contractors had no independent

method of paying their workers, Plaintiffs, and other field workers laboring on CAB/CEI's fields,

were, "as a matter of economic reality," dependent on CAB/CEI for their compensation.

*Antunez,* 1993 WL 451344, at *5.

In review, the record is rife with factual disputes as to whether CAB/CEI was a joint

employer of Plaintiffs and other workers who conduct field work for CAB/CEI between the

November-March farming season in Southern New Mexico.  Therefore, the Court should deny

CAB/CEI's summary judgment motion.

## II.     CAB/CEI BREACHED THE WORKING ARRANGEMENT – AS DEFINED IN THE 2011 CLEARANCE ORDER – WHEN WKI AND CAB/CEI HIRED PLAINTIFFS BUT FAILED TO PROVIDE THEM WITH THE WORK PROMISED.

No agricultural employer shall "without justification, violate the terms of any working

arrangement" made with an employee.  29 U.S.C. § 1822(c).  The "working arrangement" is a

broadly interpreted statutory arrangement for agricultural workers, under which an employer's

"failure to comply with the terms and conditions of employment given in a required disclosure

give rise to a breach of the AWPA."  *De Leon-Granados v. Eller & Sons Trees, Inc.,* 581 F.Supp.

2d 1295, 1317 (N.D. Ga. 2008).  The terms in a Clearance Order provided pursuant to the H-2 clearance system define the full scope of the working arrangement between all employers listed on that Clearance Order and domestic workers under 29 U.S.C. § 1822(c).  *Id.* at 1318.  *See also Donaldson v. U.S. Dep't of Labor,* 930 F.2d 339, 342 (4th Cir. 1991) *and Fulford v. Alligator River Farms, LLC,* 858 F. Supp. 2d 550, 556–57 (E.D.N.C. 2012).  This is true whether or not Plaintiffs ever actually read or received the H-2 Clearance Order.  *De Leon-Granados,* 581 F.Supp. 2d at 1324-25 (citing *Villalobos v. Vasquez-Campbell,* No. EP-89-CA-27, 1991 WL 311902, at *4 (W.D. Tex. Nov. 15, 1991)) (finding that the "privity requirements of contract law are inapplicable to Plaintiffs' statutory claim to enforce a working arrangement.").[9]

A working arrangement implies a temporal term of employment that takes it out of an at-will employment context.  *Jimenez v. GLK Foods LLC,* No. 12-cv-209, 2016 WL 2997498, at *10 (E.D. Wis. May 23, 2016) ("The 'period of employment' offered then becomes a part of the 'working arrangement' that the employer may not violate absent 'justification' in the words of the AWPA.") (citing 29 U.S.C. § 1822(c).  If, after hire, joint employers fail to provide work as promised, they will be in breach of the working arrangement.  *Hernandez v. Ruiz,* No. B-83-270, 1992 WL 510258, at *3 (S.D. Tex. May 4, 1992) (finding an employer liable for the breach of his recruiter's violation of the working arrangement where the recruiter failed to provide the quantity of work promised in the initial disclosures).

---

[9]     CAB/CEI argues that no working arrangement can exist if they did not know of all the terms promised to Plaintiffs by Campos.  However, growers are responsible for the working arrangements that their joint employer farm labor contractors make – even if the grower is unaware.  *Maldonado v. Lucca,* 636 F.Supp. 621, 627-28 (D.N.J. 1986).

Here, as stated in, *supra,* Sec. I, CAB/CEI was a joint employer of Plaintiffs under the terms of the Clearance Order.  Plaintiffs were hired under the terms of the Clearance Order presented to the DOL by WKI.  The Clearance Order promised Plaintiffs the opportunity to provide "farm labor services" to CAB/CEI and other growers between November 2011 and March 2012 at a rate of $9.71 per hour.  SJR 142-43.  The contract further promises work between November 28, 2011 and March 9, 2012.  SJR 141.  Finally, the Clearance Order promises employment for a minimum of ¾ of the days in the specified period.  SJR 152.  Among others, these were critical elements of the working arrangement formed between CAB/CEI through the Clearance Order submitted to DOL by WKI.

Plaintiffs all accepted the terms of this working arrangement.  SJR 71-73; 78-81; 83-85; 87-88; 90-922; 94; 96-98; 100-01.

WKI and CAB/CEI breached this working arrangement as set out in the Clearance Order – failing to provide any employment to Plaintiffs between November 2011 and March 2012.  SJR 159-60; 172-74.

A fact dispute exists as to whether WKI and CAB/CEI breached this working arrangement without justification.  Campos alleged to DOL that a drought required him to cancel WKI's Clearance Order.  SJR 159-60; 172-76.  However, another grower who was included on the Clearance Order with CAB/CEI stated that there was no drought and that "[it] had nothing to do with adverse weather conditions." SJR 59-60.

Contrary to CAB/CEI's arguments, the Court's previous order granting summary judgment based on agency, contract, and fraud principles is inapplicable in determination of whether CAB/CEI – as a joint employer – breached its working arrangement with Plaintiffs.  Unlike those previous claims, here, the Court need not analyze CAB/CEI's subjective intent nor

whether the terms of the Clearance Order were false or misleading.  Instead, the Court must only decide whether the working arrangement was formed and was breached.

Here, there is a genuine issue of material fact as to whether: (1) a working arrangement existed between CAB/CEI and Plaintiffs by means of the Clearance Order; (2) the working arrangement was breached when CAB/CEI and WKI failed to provide work to Plaintiffs; and (3) the working arrangement was breached without justification. For this reason, the Court should deny CAB/CEI's summary judgment motion.

## CONCLUSION

Genuine disputes of fact prevent summary judgment on Plaintiffs claims that CAB/CEI was a joint employer under the AWPA and that CAB/CEI violated the AWPA working arrangement provision.  For this reason, Plaintiffs respectfully request that the Court deny the motions for summary judgment presented by CAB and CEI.

Respectfully submitted,

February 19, 2018

TEXAS RIOGRANDE LEGAL AID, INC.
1331 Texas Ave.
El Paso, TX 79901
(915) 585-5100

*/s/ Christopher Benoit*
Jerome Wesevich
N.M. Bar No. 20389
Email: jwesevich@trla.org
Christopher Benoit
Texas Bar No. 24068653
Email: cbenoit@trla.org
Admitted to Practice in D.N.M.
ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

I certify that on the date next to my signature above I electronically filed the foregoing document and all referenced exhibits and attachments using the Court's CM/ECF system, which provides notice and service of these documents to all parties and attorneys of record in the above matter.

*/s/ Christopher Benoit*