IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ESTEBAN ALFARO-HUITRON,
ELEAZAR GARCIA-MATA,
JOSE ANTONIO GARCIA-MATA,
JUAN GUZMAN, JOSE GERARDO JASSO,
RAUL JASSO-CERDA, ISMAEL MARTINEZ
GONZALEZ, ENRIQUE ROJAS-TORRES,
LAZARO ROJAS-TORRES,
TRINIDAD SANTOYO-GARCIA
PEDRO TAMEZ, ANGELA TREJO,
EFRAIN TREJO, SANTOS TREJO,
and YANETH TREJO,

        No. 2:15-cv-00210-JCH-JHR

    Plaintiffs,

v.

WKI OUTSOURCING SOLUTIONS, LLC,
JAIME CAMPOS, CERVANTES AGRIBUSINESS,
CERVANTES ENTERPRISES, INC.,
RJF FARMS, INC., RONNIE J. FRANZOY,
TIERRA DE DIOS FARMS, LLC, RIO VALLEY CHILI
INC., LACK FARMS, INC. and SKYLINE PRODUCE, LLC

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING THE CERVANTES
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants Cervantes Agribusiness' and Cervantes Enterprises, Inc.'s ("Cervantes Defendants") joint Motion for Summary Judgment [ECF No. 233]. Plaintiffs[1] are United States citizens or lawful permanent residents who were given hiring priority through the federal H-2A program to provide manual labor on fields and land owned by

---

[1] Only nine Plaintiffs are involved in the instant matter: Esteban Alfaro-Huitron, Eleazar Garcia-Mata, Jose Antonio Garcia-Mata, Juan Guzman, Enrique Rojas-Torres, Lazaro Rojas-Torres, Raul Jasso-Cerda, Trinidad Santoyo-Garcia, and Pedro Tamez.

the Cervantes Defendants during the 2011-2012 harvest seasons. The farm labor contractor who recruited and hired Plaintiffs – Defendants WKI Outsourcing Solutions, LLC ("WKI") and its owner Jaime Campos – never actually furnished Plaintiffs to work for the Cervantes Defendants. Citing a drought, Campos cancelled Plaintiffs' work contracts at the last minute. Plaintiffs allege there was no such unusual drought; the real reason Campos cancelled their contracts was because he realized there were too many qualified U.S. workers, so he would not be able to access foreign laborers from Mexico, which was Defendants' alleged goal all along.

Based on the theory that the Cervantes Defendants and WKI "jointly employed" Plaintiffs, they sued the Cervantes Defendants under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-1854 ("AWPA") contending, among other things, that they were equally liable for WKI's cancellation of their work contracts. After carefully considering the motion, briefs, and relevant law, the Court concludes that the Cervantes Defendants' motion should be granted because they did not jointly employ Plaintiffs.

I.   **FACTUAL BACKGROUND**

Most of the facts necessary to resolve the pending motion for summary judgment are set forth in the Court's Memorandum Opinion and Order previously granting summary judgment to the Cervantes Defendants, which are either undisputed or construed in the light most favorable to Plaintiffs as the non-movants. *See* Mem. Op. and Order 1-11, ECF No. 232 ("Order"). The Court need not repeat those facts herein but adopts them by reference for the purposes of resolving the motion for summary judgment and presents the following additional material facts.

A.   **The H-2A Program**

Under the H-2A program, WKI had to give hiring priority to domestic, or "U.S. workers" like Plaintiffs before petitioning for foreign workers. An employer like WKI could hire foreign

guest laborers under the H-2A visa program only if it could certify that "there are not sufficient workers who are able, willing, and qualified" to perform the work and employing foreign workers "will not adversely affect the wages and working conditions of workers in the United States similarly employed" 8 U.S.C § 1188(a)(1). An agricultural employer or its agent works with the State Workforce Agency to recruit U.S. workers on an intrastate and interstate basis. *See* 20 C.F.R § 655.154(a). If an employer has satisfied the recruitment assurances and other promises identified in 20 C.F.R. § 655.161, then the Secretary of Labor can grant a request to hire temporary foreign agricultural labor. *See* 8 U.S.C. § 1188. The H-2A regulations require an employer to provide baseline benefits to both domestic and foreign H-2A workers. *See* 20 C.F.R. § 655.122(a). "By requiring that the employer provide these baseline benefits, the regulations ensure that foreign workers will not be appear more attractive to the employer than domestic workers, thus avoiding any adverse effects for domestic workers." *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 843 F.3d 1276, 1285 (11th Cir. 2016) ("*Garcia-Celestino I*").

"Under the program, employers must submit to the Department of Labor an application commonly referred to as a 'clearance order' detailing the terms and conditions of their prospective workers' employment." *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 898 F.3d 1110, 1116 (11th Cir. 2018) ("*Garcia-Celestino II*"). "By federal regulation, the clearance order becomes the employees' work contract by default if the employer does not draw up a separate contract for them." *Id*. (citing 20 C.F.R. § 655.122(q)).

In this case, WKI used its clearance order to recruit and hire Plaintiffs, and because no separate contract was drawn up, the clearance order served as the work contract between WKI

and Plaintiffs.[2] Under the terms of the clearance order WKI advertised the jobs with an hourly wage of $9.71 per hour of labor and that rate would have to be paid to all workers who filled the positions, whether or not the employers ultimately hired domestic or foreign H-2A workers. *See* 20 C.F.R. § 655.122(a).

In this lawsuit, Plaintiffs' basic contention is that Campos and the Defendants, including the Cervantes Defendants, always intended to exploit the H-2A program to access guest laborers from Mexico because they believed they would work harder for less money. When it became apparent that Campos would not be able to provide Mexican workers, he cancelled Plaintiffs' work contracts under the pretense of a drought.

## II.    PROCEDURAL HISTORY

In addition to the Cervantes Defendants, WKI and Campos entered into farm labor contracts under the H-2A program with five other farms based in southern New Mexico – Defendants RJF Farms, Inc. and its owner Ronnie J. Franzoy, Tierra de Dios Farms, LLC, Lack Farms, Inc., Rio Valley Chili, Inc., and Skyline Produce, LLC. Plaintiffs voluntarily dismissed claims against RJF Farms, Inc., Ronnie J. Franzoy, Rio Valley Chili, Inc., Lack Farms, Inc., and Skyline Produce, LLC. *See* ECF. Nos. 71, 146, 158.

As for the Cervantes Defendants, Plaintiffs alleged four causes of action against them for various statutory violation of the AWPA, fraud, breach of contract, and civil conspiracy. *See* Pls.' First Am. Comp., ECF. No. 103. In May and July 2016, the Cervantes Defendants moved

---

[2] The Cervantes Defendants contend that the record evidence shows that the clearance order was given only to four of the nine Plaintiffs. *See* Defs.' Mot. for Summ. J. ¶ K at 5, ECF No. 240. However, they fail to identify which Plaintiffs allegedly did not receive the clearance order, and also fail to cite the record. In any case, as explained below, because the Cervantes Defendants did not jointly employ Plaintiffs they are not liable for breaching the terms of the clearance order.

for, and the Court granted, summary judgment to the Cervantes Defendants, concluding that no reasonable jury could find them liable to Plaintiffs on those theories of liability.[3]

As for Defendants WKI and Tierra, they never obtained legal counsel as required for entity parties. *See* D.N.M.LR-Civ. 83.7. WKI attempted to answer *pro se* in conjunction with Defendant Jaime Campos, WKI's owner. *See* ECF. No. 55. The Court interpreted that answer as that of Campos', not WKI's. *See* ECF No. 69. On September 3, 2015 the Honorable William P. Lynch, United States Magistrate Judge, entered a Notice of Proposed Entry of Default Judgment, warning Tierra and WKI that unless they "retain counsel and submit answers filed by an attorney by September 25, 2015, [he would] recommend to the District Judge that default judgment be entered against them and in favor of the Plaintiffs." ECF No. 128. Tierra and WKI never heeded that warning, so on October 7, 2015 the Clerk of Court filed the Clerk's Entry of Default Judgment against Tierra and WKI for having failed to plead or otherwise defend. *See* ECF Nos. 135, 136. Plaintiffs never moved for a damages hearing, and no subsequent litigation concerning the Clerk's Entry of Default has occurred since that October 7, 2015 entry. To date, WKI and Tierra have not obtained legal counsel.

Defendant Jaime Campos, *pro se*, also appears to have stopped participating in the litigation. His last docket filing was on October 10, 2015. *See* ECF No. 137. He failed to appear at a status conference before Judge Lynch on March 2, 2016, although he did participate in a mid-March 2016 deposition. *See* ECF Nos. 161, 168.

## III.  STANDARD OF REVIEW

---

[3] At that time the Court did not grant the Cervantes Defendants summary judgment on the instant matter because the Cervantes Defendants did not clearly identify that claim as one for which they sought summary judgment. They broadly moved for summary judgment "as to all claims." But they did not cite § 1822 or advance any legal arguments against that provision. The Court, *sua sponte*, granted the Cervantes Defendants leave to file a motion for summary judgment, which they did two weeks later.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248–50. An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013). In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant. *See Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015). When "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Cassara v. DAC Serv., Inc.*, 276 F.3d 1210, 1212 (10th Cir. 2002). The burden then shifts to the opposing party to come forward with admissible evidence to create a genuine issue of material fact on that element. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

**IV.   DISCUSSION**

The Court next analyzes whether the Cervantes Defendants and WKI jointly employed Plaintiffs such they are equally liable for WKI's cancellation of their work contracts.

**A.  The AWPA and Joint Employment Principles**

In Paragraph 142(b) of Plaintiffs' First Amended Complaint, Plaintiffs sue the Cervantes Defendants under 29 U.S.C. § 1822(c) on the theory that they are liable for WKI's and Campos' last minute cancellation of their work contracts. Section 1822(c) provides that "[n]o farm labor contractor, agricultural employer, … shall, without justification, violate the terms of any working

arrangement made by that contractor, employer, or association with any migrant agricultural worker." Plaintiffs contend that the "working arrangement" at issue was the clearance order that was used to recruit and hire them.

The Cervantes Defendants are liable only if they jointly employed Plaintiffs with WKI. In order "to assure necessary protections for migrant and seasonal agricultural workers," 29 U.S.C. § 1801, the AWPA imposes obligations on "agricultural employers."[4] Under the AWPA, the term agricultural employer means "any person who owns or operates a farm, ranch, processing establishment, cannery, gin, packing shed or nursery, or who produces or conditions seed, and who either recruits, solicits, hires, employs, furnishes, or transports any migrant or seasonal agricultural worker." *Id*. § 1802(2). If an employer fails to adhere to any of the provisions in the AWPA the statute creates a private right of action in federal court on behalf of all aggrieved persons. *Id.* § 1854(a). The Act empowers district courts to impose actual damages or statutory damages of $500 per plaintiff per violation. *Id.* § 1854(c).

For purposes of the AWPA, the term "employ" has the same definition as that used in the Fair Labor Standards Act. *Id*. § 1802(5). "'Employ' includes to suffer or permit to work." 29 U.S.C. § 203(g). "Under the AWPA, [agricultural employers] who engage the services of farm labor contractors to furnish farmworkers are found to have 'employed' the members of the labor contractors' crews … when the independent farm labor contractor is 'not completely disassociated with respect to the employment' of workers, such that the labor contractor and the grower are deemed to jointly employ the workers." *Fanette v. Steven Davis Farms, LLC*, 28 F. Supp. 3d 1243, 1254 (N.D. Fla. 2014) (citing 29 C.F.R. § 500.20(h)(4)-(5); 29 C.F.R. § 791.2(a)).

---

[4] The Court explained in its previous Order that both of the Cervantes Defendants qualify as agricultural employers under the AWPA. *See* Mem. Op. and Order at n.3 & 23.

Relevant regulations define "joint employment" as "a condition in which a single individual stands in the relation of an employee to two or more persons at the same time." 29 C.F.R. § 500.20(h)(5). Because the use of farm labor contractors is common in agricultural employment, *see Gonzalez-Sanchez v. Int'l Paper Co.*, 346 F.3d 1017, 1020 (11th Cir. 2003), the joint employment doctrine ensures that agricultural employers cannot "shield[] themselves from liability for mistreating employees [b]y hiring (and thereby shifting liability to) intermediary" labor contractors. *See Castillo v. Case Farms of Ohio, Inc.*, 96 F. Supp. 2d 578, 589 (W.D. Tex. 1999). Thus under the AWPA, "agricultural entities [are] directly responsible for farmworkers who, as a matter of economic reality, depend[] upon them, even if the workers were hired or employed by a middleman or independent contractor." *Antenor v. D & S Farms*, 88 F.3d 925, 930 (11th Cir. 1996). "Congress' plain intent was to protect migrant and seasonal workers from abuse and exploitation, and to hold 'agricultural employers' fully accountable as joint employers whenever the facts suggest that liability is fairly imposed." *Id.*

"Whether an entity qualifies as a joint employer is a question of law" for the court to decide. *Garcia-Celestino I*, 843 F.3d at n.12 & 1293. "[T]he ultimate question to be determined" by the court "is the economic reality – whether the worker is so economically dependent upon the agricultural employer/association as to be considered its employee." 29 C.F.R. § 500.20(h)(5)(iii). The court asks "whether the worker's employment with the two entities should be treated as "one employment" for purposes of determining compliance with" and liability under the AWPA. *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 137 (4th Cir. 2017). The "relevant relationship" the court examines is "the relationship between the putative joint employers." *Id.* (explaining that courts should not "improperly focus on the relationship between the employee and the putative joint employer, [but] rather … on the relationship between the

putative joint employers.") If the court determines that "as a matter of economic reality, a laborer is dependent upon the [farm labor contractor] and the agricultural employer, then a joint employment relationship exists, and the laborer will be considered an employee of both entities." *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1208 (11th Cir. 2003). But if the court's analysis shows that two entities "are completely disassociated with respect to the employment of a particular employee, a joint employment situation does not exist." 29 C.F.R. § 500.20(h)(5). In determining the joint employment test, courts look to the following regulatory factors.

> (A) Whether the agricultural employer/association has the power, either alone or through control of the farm labor contractor to direct, control, or supervise the worker(s) or the work performed (such control may be either direct or indirect, taking into account the nature of the work performed and a reasonable degree of contract performance oversight and coordination with third parties);
> (B) Whether the agricultural employer/association has the power, either alone or in addition to another employer, directly or indirectly, to hire or fire, modify the employment conditions, or determine the pay rates or the methods of wage payment for the worker(s);
> (C) The degree of permanency and duration of the relationship of the parties, in the context of the agricultural activity at issue;
> (D) The extent to which the services rendered by the worker(s) are repetitive, rote tasks requiring skills which are acquired with relatively little training;
> (E) Whether the activities performed by the worker(s) are an integral part of the overall business operation of the agricultural employer/association;
> (F) Whether the work is performed on the agricultural employer/association's premises, rather than on premises owned or controlled by another business entity; and
> (G) Whether the agricultural employer/association undertakes responsibilities in relation to the worker(s) which are commonly performed by employers, such as preparing and/or making payroll records, preparing and/or issuing pay checks, paying FICA taxes, providing workers' compensation insurance, providing field sanitation facilities, housing or transportation, or providing tools and equipment or materials required for the job (taking into account the amount of the investment).

29 C.F. R. § 500.20(h)(5)(iv)(A)-(G). The laborer carries to the burden of proof to establish the joint employment inference by a preponderance of the evidence. *See Martinez-Mendoza*, 340 F.3d at 1209.

### B. Analysis of Factors

The Court next applies the seven regulatory factors above to determine whether the Cervantes Defendants and Campos jointly employed Plaintiffs.

*i. <u>Power to Direct, Control, or Supervise, Both Directly and Indirectly</u>*

This factor focuses on whether the putative employer takes an "overly active role" in overseeing the work performed by the workers. *Martinez-Mendoza,* 340 F.3d at 1209-10. "[C]ontrol arises when the alleged employer goes beyond general instructions, such as how many acres to pick in a given day, and begins to assign specific tasks" or workers. *Id.* at 1210. An alleged employer engages in active oversight when it makes such decisions as: (1) whom and how many employees to hire; (2) whom to assign to specific tasks; (3) when work should begin or end each day; (4) when a particular field will be harvested or planted; and (5) whether a worker should be disciplined. *Id.* at 1210; *see also Charles v. Burton*, 169 F.3d 1322, 1329-30 (11th Cir. 1999).

In this case, Plaintiffs never actually worked on the Cervantes Defendants' lands. They therefore rely heavily on the Cervantes Defendants' past employment of a different farm labor contractor, Jesus Maldonado, as a proxy, contending that the Cervantes Defendants exercised substantial control of Maldonado and his work crew, and perforce would have done the same to Campos and Plaintiffs. For instance, Plaintiffs note how Dino Cervantes would instruct Maldonado to provide a specific number of workers to harvest a specific crop at a specific time. *See* Pls.' Resp. 11-12, ECF No. 234. The Cervantes Defendants deducted FICA taxes for

Maldonado's laborers, could alter Maldonado's compensation, and Dino Cervantes monitored Maldonado's laborers' wages. *Id*. Plaintiffs also argue that Maldonado's laborers effectively depended on the contract between the Cervantes Defendants and Maldonado, since they drew their wages from that contract. *Id*.

This evidence concerning Maldonado would powerfully suggest that the Cervantes Defendants exercise control and supervision of farm labor contractors and their crews. But is the Cervantes Defendants' relationship with Maldonado, a non-party to this case, relevant evidence of the relationship between the Cervantes Defendants and WKI? Plaintiffs say so, relying on a single district court opinion, *Rodriguez et al. v. SGLC, Inc.*, 2012 WL 5704403 at *7-8, 2:08-cv-01971-MCE-KJN (E.D. Cali. Nov. 15, 2012). There, as here, a farm labor contractor, SGLC, hired plaintiffs under the H-2A program to work on grower's lands. *Id*. at *1. And there, as here, SGLC did not furnish plaintiffs to work on the grower's lands. Unlike here though, the grower had employed SGLC and its crew in the past. *Id.* at *7. Their business history was relevant evidence. So the plaintiffs relied on that history, noting how the grower would perform quality control over SGLC's crew's work, supervise the crew's members, monitor their timesheets, and dictate whether to pay them an hourly or piece rate. *Id*. at *8. Here, WKI and the Cervantes Defendants had no prior history from which Plaintiffs can extrapolate. Using Maldonado as a stand-in is not relevant evidence of the relationship between WKI and the Cervantes Defendants. The conclusion in *Rodriguez* is not precedential or persuasive.

As between WKI and the Cervantes Defendants, the record construed in Plaintiffs' favor does show the following indicia of control and supervision that the Cervantes Defendants would have exercised: 1) they would have trained Plaintiffs on how to harvest crops; 2) they hired a specific number of laborers to harvest specific fields for a specific duration; and 3) they could

have asked WKI to "replace" a laborer. *See e.g. Charles*, 169 F.3d at 1330 (control found where agricultural determined when, where, and for how long farm labor contractor's crew would pick snap beans).

The main problem, though, is that Plaintiffs never actually worked on the Cervantes Defendants' lands. The Court therefore cannot meaningfully evaluate the degree of supervision and control they would have exercised over Plaintiffs. This is important because whereas an overly active putative employer tilts towards a finding of joint employment, "de minimis supervision," does not. *See Antenor*, 88 F.3d at 935 (internal quotations omitted). The Court cannot asses on which side of the dividing line the Cervantes Defendants stand.

That aside, the next problem Plaintiffs have is that the indicia of control and supervision Plaintiffs cited could well be "agricultural decisions" – that is, "necessary parts of agricultural administration such as choosing which fields to pick on which days or dictating what planting specifications should be used." *Garcia-Celestino II*, 898 F.3d at 1126. Even though such decisions "might indirectly affect how many workers need to be hired," they still do not show 'control[.]'" *Id*. The record as a whole shows that the Cervantes Defendants exercised very little control. WKI alone chose who and how to hire. The Cervantes Defendants were not involved in WKI's internal organization. There is no evidence that the Cervantes Defendants would have decided when Plaintiffs began their work day, took breaks, or finished their work. Plaintiffs have presented no evidence that the Cervantes Defendants would have assigned work to specific workers, inspected the work performed, or would have closely monitored Plaintiffs. *Cf. Torres-Lopez v. May*, 111 F.3d 633, 642-43 (9th Cir. 1997) (grower exercised "significant control" when it controlled harvest schedule, number of workers, decided days for harvesting, inspected work performed, had a daily presence in the field, and monitored the farmworkers closely.)

Plaintiffs argue that the Cervantes Defendants exercised supervision and control over them because Campos testified that he would "have to replace" a worker that the agricultural employer did not want. Dep. of Jaime Campos 71:19, ECF No. 234-2. But Campos' testimony tells a different story. A few lines later he stated that "if someone is not behaving or doing the right job or something, it was for [WKI] first to try to encourage the person to – to comply, to do it," *id*. at 71:24-25 – 72:1-2, suggesting that the Cervantes Defendants would not have directly been involved in the discipline or retention of Plaintiffs. All in all, this factor does not weigh in Plaintiffs' favor.

### ii. Direct or Indirect Power to Hire or Fire, Modify Employment Conditions, or Determine Rates or Methods of Pay

In analyzing this factor, courts look at whether the putative employer can make business decisions that impact the worker's conditions of employment, such as determining hiring or firing decisions, the number of hours to be worked each day, and whether the putative employer dictates pay rates and methods. *See Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1179 (11th Cir. 2012). In *Antenor* the putative employers jointly employed the plaintiffs where they exercised "veto" power of the farm labor contractor's hiring decisions, "monitored the workers' job qualifications rather than relying on" the farm labor contractor to do so, and "dictated the workers' hours" by deciding when work should begin, by forcing the workers to stop working, and by bringing in their own work crews at their discretion. 88 F.3d at 935.

The Cervantes Defendants and WKI signed an "Agreement of Outsourcing Support" governing the number of workers and services that the Plaintiffs were to provide to the Cervantes Defendants. *See* Agreement of Outsourcing, ECF No. 234-2, 123 ("AOS"). However, WKI, not the Cervantes Defendants, was responsible for presenting to the Plaintiffs the fully prepared work contract, with job descriptions, pay rates, and methods of payment already specified.

Plaintiffs contend that the Cervantes Defendants effectively dictated Plaintiffs' wages by deciding to pay them on an hourly, rather than piece rate, basis. However, as Plaintiffs repeatedly acknowledge, the H-2A regulations require the employing entity to pay workers an hourly wage of either the AEWR or the federal minimum hourly wage. And besides, Plaintiffs presented no evidence that the Cervantes Defendants were the ones who chose between a piece-rate or an hourly method of payment. It appears WKI made that decision. So this argument is unavailing.

Plaintiffs also argue that the Cervantes Defendants were able to impact the workers' conditions of employment as evidenced by Dino Cervantes' statement that "if somebody didn't harvest chile to quality standards, I'll tell the contractor that he didn't do a good job." Pls.' Resp. at 13. Plaintiffs argue this meant that the Cervantes Defendants could "vet the quality of work performed." *Id*. But even reading the record in Plaintiffs' favor, this is again the sort of "agricultural decision which does not constitute the type of 'control' that the … [AWPA] address[es]." *Martinez-Mendoza,* 340 F.3d at 1211 (holding that "the drafting of plant specifications is unquestionably an agricultural decision.") An agricultural employer does not jointly employ a farm labor contractor's crew simply because it ensures the crew complies with contract specifications. *See id.*  Accordingly, this factor does not weigh in Plaintiffs' favor.

### iii. *Permanency and Duration*

Plaintiffs argue that they were hired for a fixed period, November 2011 to March 2012, and that their work relationship would have been permanent to the extent that their work is inherently seasonal. Indeed, "[h]arvesting of crops is a seasonal industry … [h]owever temporary the relationship may be … the relationship is permanent … [if] the migrants work only for [the] defendants during that season." *Charles*, 169 F.3d at 1332. "Where [a farm labor contractor] and its workers are engaged for the duration of the operation and are obligated work exclusively for

the employer at its discretion, this factor would suggest economic dependence." *Martinez-Mendoza*, 340 F.3d at 1212. Although Plaintiffs were hired to work for a specific harvest period, Plaintiffs presented no record evidence that WKI would have furnished Plaintiffs to work primarily or exclusively with the Cervantes Defendants as opposed to several other farmers WKI also had labor contracts with. Neither the clearance order nor the contract between the Cervantes Defendants and WKI specify such terms. Thus, the evidence suggests that there was little, if any, permanency and duration of the relationship between Plaintiffs and the Cervantes Defendants. So this factor is not in Plaintiffs' favor.

### iv. *Whether the services rendered were repetitive and rote*

"The lower the worker's skill level, the lower the value and marketability of his services, and the greater the likelihood of his economic dependence on the person utilizing those services." *Martinez-Mendoza*, 340 F.3d at 1212. Whether Plaintiffs would harvest crops or process and pack dry chile for the Cervantes Defendants, either activity is likely a repetitive and rote task. *See Charles*, 340 F.3d at 1332 (picking snap beans was a "repetitive and rote task requiring relatively little training.") This factor weighs in favor of finding of joint employment.

### v. *Integral part of the overall business operation*

"This factor is probative of joint employment because a worker who performs a routine task that is a normal and integral phase of the grower's production is likely to be dependent on the grower's overall production process." *Charles*, 169 F.3d at 1332 (internal quotations and citations omitted). Plaintiffs claim that they would have harvested red chile for the Cervantes Defendants and that harvesting chile is an integral part of the Cervantes Defendants' operations. As support Plaintiffs cite an interrogatory showing that Cervantes Agribusiness produces cotton,

corn, chile, and pecans, and they cite Dino Cervantes' statement that the Cervantes family has been in agriculture for multiple generations. *See* Pls' Resp. at 15.

The Cervantes Defendants challenge Plaintiffs' assertion that harvesting chile is an integral part of their operations, saying that chile is one of numerous crops they produce. Cervantes Enterprises also contends that it is not involved in chile harvesting at all. But reading the record in Plaintiffs' favor, as the Court must, the evidence shows that harvesting chile is an integral part of the Cervantes Defendants' operations. Dino Cervantes, Cervantes Agribusiness' general manager, explained that he is "involved in the chile industry," that his various family members "are involved at different capacities and different aspects of the chile industry," that agriculture is a family vocation "and chile is part of that." Dep. of Dino Cervantes, cited by Plaintiffs as "SJR 27:13-23", ECF No. 234-2 at 27.

This evidence suggests that Cervantes Enterprises is in the "chile industry" even if it not the entity overseeing harvesting operations. Cervantes Agribusiness appears to have played that role. Testimony from Dino Cervantes and his farm labor contractor Jesus Maldonado suggests that Cervantes Agribusiness relied greatly on the work of manual field laborers. *See id.* cited by Plaintiffs as SJR 28:9:15; Dep. of Jesus Maldonado, cited by Plaintiffs as SJR 34:1-25 – 35:1-25, ECF No. 234-2 at 34-45. *Cf. Martinez-Mendoza*, 340 F.3d at 1213 (hand-planting of seedlings was not "indispensable" work because forests naturally regenerate and because most of defendant's seedlings were machine-planted). Plaintiffs' evidence sufficiently demonstrates that chile harvesting was an integral part of the Cervantes Defendants' overall operations.

The Cervantes Defendants also dispute that Plaintiffs would have worked for them specifically as opposed to other farmers. True, the contract between WKI and the Cervantes Defendants called for a generic "15 farm workers." *See* AOS. It did not specifically identify

Plaintiffs. But the fact remains that those 15 workers would have harvested crops on the Cervantes Defendants' premises, and that the performance of this task would have been integral to the Cervantes Defendants' overall operations. So this factor weighs in Plaintiffs' favor.

### vi. *Work performed on the agricultural employer's premises*

The Cervantes Defendants concede that Plaintiffs would have worked on their lands. However, when the court in analyzed this factor in *Martinez-Mendoza* it suggested that workers who are unaware of the putative employer's identity are not jointly employed by that employer. 340 F.3d at 1214.  The plaintiffs' farm labor contractor hired and transferred them to work in forests owned by different landowners, so the plaintiffs never knew on whose land they worked. *Id.* They did not "rel[y] upon or anticipate[]" the putative employer's business a source of income. *Id.* However, because the plaintiffs did actually work on the defendant's forest land, the court found this factor in plaintiffs' favor, but only "slightly." *Id*. Here, Plaintiffs likewise never knew they would work for the Cervantes Defendants or on their lands. And as mentioned earlier, Plaintiffs presented no record evidence that WKI would have furnished Plaintiffs to work primarily or exclusively with the Cervantes Defendants as opposed to several other farmers WKI also had labor contracts with. This factor may weigh in Plaintiffs' favor, but as in *Martinez-Mendoza*, only slightly.

### vii. *Responsibilities ordinary performed by employers*

"The final factor examines whether [the putative employer] undertook responsibilities for workers often undertaken by employers, such as (1) preparing and/or making payroll records, (2) preparing and/or issuing pay checks, (3) paying FICA taxes, (4) providing workers' compensation insurance, (5) providing field sanitation facilities, housing or transportation, or (6) providing tools and equipment or materials required for the job." *Martinez-Mendoza*, 340 F.3d at

1214. "The provision of such services "is both an objective manifestation of employer status and strong evidence of the workers' economic dependence upon [it]." *Id*. Thus in *Martinez-Mendoza*, the court found that this factor did not suggest joint employment when the putative employer "provided none of these services[.]" *Id.* "The [farm labor contractor] alone prepared the laborer's payroll records and checks, paid their FICA taxes, provided their housing, transportation, tools, etc." *Id*.

Plaintiffs submitted no evidence that the Cervantes Defendants undertook responsibilities commonly performed by employers. There is no evidence that the Cervantes Defendants would have managed Plaintiffs' payroll, provide workers' compensation insurance, provide field sanitation facilities, or provide house or transportation. The clearance order identified WKI alone as the employer. According to the clearance order, WKI was to provide workers three meals a day at specified cost, housing, transportation, and minimum work hours. WKI was responsible for deducting FICA and state taxes. The clearance order offered unemployment insurance, workers' compensation insurance, and tools at no charge. There is simply no indication in the record that the Cervantes Defendants were responsible for any of these services. This factor does not weigh in Plaintiffs' favor.

### C. Weighing of Factors

Of the seven regulatory factors, only three weigh in Plaintiffs' favor (and one of them only slightly.) Again, in analyzing whether the Cervantes Defendants jointly employed Plaintiffs, "the ultimate question to be determined is the economic reality – whether the worker is so economically dependent upon the agricultural employer/association as to be considered its employee." 29 C.F.R. § 500.20(h)(5)(iii). The answer is no, because there is little to no evidence that the Cervantes Defendants would have directly impacted Plaintiffs' employment,

performance, controlled their qualifications, payment, and the like. Plaintiffs were unaware of the Cervantes Defendants' existence. WKI, not the Cervantes Defendants, signed itself up to do employer-like things such as pay Plaintiffs and deduct their taxes. WKI was to furnish them meals, housing, and transportation. When weighed together the factors strongly show that the Cervantes Defendants did not jointly employ Plaintiffs with WKI. They are not liable for WKI's breach of any working arrangement under 29 U.S.C. § 1822(c).

**IT IS THEREFORE ORDERED** that Cervantes Agribusiness' and Cervantes Enterprises Inc.'s Joint Motion for Summary Judgment **[ECF No. 233]** is **GRANTED**. Those parties are hereby **DISMISSED**.

**IT IS SO ORDERED**.

_____
UNITED STATES DISCTRICT COURT JUDGE