**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| ESTEBAN ALFARO-HUITRON, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | No. 2:15-210 GJF/JHR |
| v. | § | |
| | § | Civil Action |
| Jaime Campos, *et al.* | § | |
| | § | |
| Defendants. | § | |

**JOINT PRETRIAL ORDER**

This matter is before the Court pursuant to Fed. R. Civ. P. 16.  The parties conferred and submit the following Amended Pretrial Order.  The parties previously submitted an Amended Pretrial Order on October 10, 2018.  However, given the modifications to trial resulting from the Court's calendar and the parties' consent to try this case to the Honorable Gregory J. Fouratt, the remaining parties have modified the Pretrial Order as follows:

## I.  APPEARANCES

Attorneys who will try this action:

| | |
|---|---|
| For Plaintiff(s) | Jerome Wesevich and |
| | Christopher Benoit |
| | Texas RioGrande Legal Aid |
| | 1331 Texas Avenue |
| | El Paso, Texas  79901 |
| | (915) 585-5103 |
| | jwesevich@trla.org |
| | |
| For Defendant Jaime Campos | Jaime Campos, *Pro Se* |
| | 128 Tierra Vista Dr. |
| | Santa Teresa, NM 88008 |
| | jaimecampos@msn.com |

1

## II.  JURISDICTION AND RELIEF SOUGHT

A.      Subject Matter Jurisdiction.

      1.       Was this action removed or transferred from another forum?  __X__ Yes ___ No

If yes, was the action removed or transferred?

____ Removed    __X__ Transferred     <u>U.S. Dist. Court, W.D. Texas</u>  Original forum

      2.       Is subject matter jurisdiction of this Court contested?

__X_____ Uncontested    _____ Contested  _____ Party contesting

      3.       Asserted basis for jurisdiction.

__X___ Federal Question    _____ Diversity    _____ Other

Statutory Provision(s) Invoked:  <u>29 U.S.C. §§ 1801, *et seq.* _____</u>

B.      Personal Jurisdiction and Venue.

      1.       Is personal jurisdiction contested?

__X___ Uncontested _____ Contested

Identify the party contesting personal jurisdiction and basis for objection:

_____

      2.       Is venue contested?

__X___ Uncontested _____ Contested  _____ Party Contesting

Identify the party contesting personal jurisdiction and basis for objection:

_____

C.      Are the proper parties before the Court?

__X___ Uncontested _____ Contested

If contested, identify each missing party or improper party and the basis for contention:

_____

D.     Identify the affirmative relief sought in this action.

      1.     Plaintiffs seek:

           a.     declaratory judgment that Campos violated Plaintiffs' AWPA rights and defrauded Plaintiffs;

           c.     for each AWPA violation by each Campos, statutory damages of $500 per violation or actual damages for each violation, whichever is greater, pursuant to 29 U.S.C. § 1854;

           c.     actual, incidental, and consequential damages resulting from Campos' fraud;

           d.     punitive damages for Campos' fraud;

           e.     reasonable litigation expenses and costs of court; and

           f.     pre-judgment and post-judgment interest.

      2.     Defendants seek:

**Defendant Jaime Campos:**

           a.     Defendant Jaime Campos asserts that there was never either intention or violation to the Plaintiff´s AWPA, that Plaintiffs are barred from recovery, in whole due to absence of any contractual relationship with Plaintiffs, no fraud, no breach of contract, no statutory basis for Plaintiff´s claim under AWPA as federal H2A law, and no civil conspiracy.

## III.  BRIEF DESCRIPTION OF NATURE OF CLAIMS/DEFENSES

A.     Plaintiffs' claims:

Federal "H2A" immigration law only allows employers to import Mexican agricultural workers if: (a) insufficient U.S. workers are available; and (b) employers pay the "Adverse Effect Wage Rate" (AEWR), which was $9.71 per hour in 2011.  Southern New Mexico farmers had access to all of the U.S. agricultural workers that they needed in 2011, and only paid New Mexico's minimum wage of $7.50 per hour.  Plaintiffs are U.S. agricultural laborers who customarily earn minimum wage.

In 2011, several farmers contracted with Defendant Jaime Campos and his new business, Defendant WorKonnection International Outsourcing Solutions, Inc. (WKI), to secure H2A workers from Mexico for work beginning in November 2011 and lasting through March 2012. Campos never planned to pay the AEWR for the labor of these Mexican workers.  Campos

submitted an H2A application to the U.S. Department of Labor (DOL) based on false information.  DOL conditionally certified Campos' H2A application, and then demanded that Campos prove that he had attempted to recruit U.S. workers prior to importing Mexican H2A workers.  In attempting to show recruiting efforts to the federal government, Campos falsely promised the November-March jobs to U.S. workers, including Plaintiffs in El Paso and South Texas, and Plaintiffs accepted the offer of employment as stated in WKI's H2A application.

Campos soon realized that the overwhelming U.S.-worker demand for his job offer, and its relatively high wage, would actually prevent Campos from accessing any Mexican H2A workers, Campos falsely informed DOL that drought precluded the need for any workers under his H2A application.  Campos and the farmers failed to provide the promised work to Plaintiffs, and Campos did not supply any laborers to any of the four farmers listed in WKI's H2A application.  In spite of WKI's drought claim, the farmers actually provided November-March work to their U.S. laborers as usual, and paid these laborers only minimum wage.

Plaintiffs claim that Campos made false promises of employment to them as a means of attempting to access Mexican agricultural workers without complying with federal immigration law.  Plaintiffs contend that:

(1)  Campos intentionally violated Plaintiffs' AWPA rights by:  breaching the "working arrangement" that all Defendants made with Plaintiffs through WKI in violation of 29 U.S.C. § 1822(c).

(2) Campos violated Plaintiffs' AWPA rights by:
(a) causing false information to be provided to Plaintiffs in violation of 29 U.S.C. 1821(f);
(b) failing to disclose, in writing, the terms and conditions of employment to some Plaintiffs in violation of 29 U.S.C. § 1821(a); and
(c) failing to provide written disclosures in Spanish as required for some Plaintiffs in violation of 29 U.S.C. § 1821(g).

(3) Campos defrauded Plaintiffs.

B.    Defendants' defenses:

**Defendant Jaime Campos:**

It all begins while I, Jaime Campos was employed by the State of New Mexico as the Executive Director of the New Mexico Border Authority. During the time I served as a government official, I saw many issues regarding Southern New Mexico such as

Economic Development, Ports of Entry supervision, Border Security and the problematic of undocumented people.

One of the big concerns happened when the Governor (Bill Richardson), in an interview with the press stated "to punish anybody who hires undocumented workers". I said to him, "why not instead of punishing our constituents (Meaning NM Farmers), we, the State Government prepares a plan to help them".

All this happened regarding farming and current situation. I was instructed to find out the way to do it right whenever there was a lack of hands to pick up the crops.

I made a presentation to the "New Mexico/Chihuahua Commission" in May 2009 and to the Secretary of Agriculture, of a plan to jointly help each other State through the H2A visa program for agricultural workers, a program that was welcomed by both Governors.

The office of the New Mexico Border Authority found out about many workers didn´t have a working visa and were crossing the Border with just a "Tourist Visa" which is not valid for working, but worked in the crop fields.

The whole intention was to implement a way of recruiting Legal farm workers in the State of New Mexico.

Surveying Farmers in Southern New Mexico I found out that most of the current labor during the season was unreliable, large absenteeism, liked to drink beer during work hours and insufficient workers.

I worked for over seven years for the State of New Mexico and when I left the position, I had a job offer with WKI Outsourcing Solutions, LLC as President working for a Mexican National who registered the Company in Texas; Mr. Hector Cruz Martinez.

Mr. Cruz Martinez had made contact with the Governors from Chihuahua and other Mexican States, and had a long list of interested farm workers and knowledge about H2A visa program.

WKI was not successful in getting started in the Region due to severe drought.

This situation made planning very hard to Farmers, especially when the process to request H2A visas has to start at least 60 days before the crop begins.

The farmers have to hope for the best weather for their crops but until the time comes is when they have to deal with it the best way they can. It is very hard to know exactly how many hands they'll need and of course nobody wants to be short when it is time to pick up the crops.

Climate in the Region has been a factor, the serious drought and the lack of good water for irrigation. On top of these, hail storms damaging crops.

WKI had the best intentions to make it good for both, farmers and farm workers, and to make it a good business.

Too bad it did not work in New México.

## FACTS

The Plaintiffs and their representation, are trying to mislead the Court by basing their own assumptions as facts.

The H2A program has been in place and working well in the United States in many farming States.

The program can hardly work around the Border with Mexico due to the possibility of getting farm workers that crosses the border with a "Tourist" visa and find work along the border zone. In other words they cross into the United States with a legal document (Visa) which is no good or valid for working; and illegal workers are frequently abused in pay by Farm Labor Contractors; In other words, paid less than the minimum wage due to their illegal status.

It has been a common practice for many years, and the intention was to eliminate trouble for Farmers and having sufficient and reliable hand labor legally.

Another misinterpretation or wrong assumption by the Plaintiffs is regarding pay. Even when the contracts never happened due to "Acts of God" and there for the impossibility to have a contract, is the assumption that the intention was to pay less than the established "Prevailing Wage" mandated by the Federal Department of Labor.

It is totally false that WKI was trying to get H2A visa workers to get paid less than the Prevailing Wage and to dissuade U.S. workers from accepting the jobs.

Proof of this is that in 2013, WKI was authorized for H2A visas in the State of Georgia where Domestic Workers and H2A visa farm workers were hired and paid equally the "Prevailing Wage "mandated by the Federal Department of Labor.

WKI was invited by Agricultural Commissioner Gary Black to present the idea of WKI regarding Farm Labor and expressed his interest because it was true and legal which was what the State of Georgia was looking for and it was good for all the United States.

It is not true that the Plaintiffs could not get a job because of WKI. They live in the Valley of Texas and / or El Paso, Texas and they commonly work agriculture in northern States or in New Mexico every year and perfectly know other Farm Labor Contractors for whom they have worked many times before and now.

When WKI presented the intention to operate in the area, clearly explained how the startup was planned hiring only "Men" due to lack of dormitories for "Women". The Church where WKI planned to contract Dormitories was able to build only the right number of restrooms and showers for Men.

If everything was going as planned, the following season they could have ready the dormitories and facilities for Women.

The **Trejo** family knew about this on a telephone call, so there for they were not interested unless it was for all family members willing to work together.

Another wrong assumption by the Plaintiffs is that WKI or I did not have experience recruiting. I have a strong background working as a Human Resources Manager and Director. More than 25 years doing it. It is true that was first time in agriculture, but there is no special training needed to do it. There is no requirement by the Federal or State Departments of Labor to become a "Farm Labor Contractor". It is just an application that anybody could fill up and request a Certificate for free.

It is a wrong statement by the Plaintiffs that I formed WKI Outsourcing Solutions, LLC. It was Mr. Hector Cruz Martinez who did it prior to me started to work for WKI.

WKI never got any Grant money as stated by the Plaintiffs. The investment to build the dormitories and facilities in El Paso, Texas was all done by them at "Un Nuevo Pacto" church.

WKI invested in the bunk beds, and the mattresses were donated by the Texas State University who was a true believer of the program. Something that "La Union" in El Paso for the agricultural farmers doesn't even have, and they receive big amounts of money through Grants.

## CONCLUSION

There was at all times good faith and good intention of working to have sufficient, legal and reliable work force.

The Defendant Farms, at all times mentioned their intention to keep working with their current Farm Labor Contractors in the area, since this was going to be the first time trying H2A workers.

WKI in good faith, even though the Department of Labor granted permission to bring 92 H2A visa workers, when it was decided that weather conditions and severe drought and limited water due to restrictions to pump more from wells were limiting the crops to be picked up, and the Farmers canceled the agreement because there was going to be NO NEED to contract WKI outsourcing services, WKI requested their Law Firm (Scott & Hulse) to cancel the request supported by enough information as required by the Federal Department of Labor.

It was done timely and DOL granted the cancelation as it was correctly requested and supported.

WKI could not pay in full the Law Firm Scott and Hulse what was owed for services rendered due to the big loss WKI had.

There were no false statements regarding weather and climate situations. The DOL asked to provide proof of it and the Law Firm Scott & Hulse demonstrated with enough facts and in a timely manner.

WKI informed the Local Workforce offices (Ms. Ann Armijo) and DOL informed via E-mail to them as well.

WKI did not receive any money from the Defendant Farmers or anybody else, and all expenses for the process and fees payable to DOL were done by WKI.

Proof that WKI informed about the cancellation of the process on time, is that no worker showed up at the fields or at the dormitories the day the work was supposed to start.

WKI took the loss and blamed nobody for it. It was part of trying to do good business.

Proof of this was provided in the first response I did to the Plaintiffs' initial complaint, like letters, emails and signed cancellation agreements with the Farmers.

All should be on file.

I had documented that I was under Bankruptcy Chapter 13; I do not work for WKI since late 2013.

I was trying to avoid foreclosure on my New Mexico home through an attempt for "Short Sale" under a government program. Tanzy & Borrego in El Paso is the Bankruptcy Law Firm who had my case.

## JURY DEMAND

Wherefore, I, Jaime Campos kindly request the Jury to stop the Legal Aid wrong advice to the Plaintiffs of trying to get easy money from an act of attempting to help and find legal solutions to a clear problem that occurs in all the United States of America.

## PRAYER

WHEREFORE, I respectfully requests that this Court determines that there is no proof of conspiracy to violate federal H2A law, absolutely no fraud intention and no breach of contract, simply because the work or agreement never happened or started and there is proof of a timely, legal and well processed cancellation by the Law Frim Scott & Hulse. I don´t have any pending issues with the Federal or local Department of Labor from this matter or any other I worked after New Mexico.

It all is a wrong ASUMPTION by the Plaintiffs and their legal representation as WKI successfully performed in the State of Georgia a combination of H2A workers and domestic farm workers, after an impossibility of contract in the State of New Mexico.

## IV. FACTUAL CONTENTIONS UNDERLYING CLAIMS/DEFENSES

A.      Stipulated Factual Contentions.

The parties were unable to agree to any stipulated factual contentions.

B.      Contested Material Facts.

1.      Plaintiff's Contentions:

A.  Federal "H2A" law permits foreign agricultural guest workers into the United States only if: (1) an insufficient number of U.S. workers accept the jobs after being offered the jobs ahead of foreign workers; and (2) the "adverse effect wage rate" (AEWR, which was $9.71 per hour for New Mexico during 2011) is paid to all U.S. and foreign workers who accept the jobs.

B.  For decades prior to 2011, Southern New Mexico chile, pecan, and onion growers have not accessed foreign H2A labor.  Instead they rely upon local workers to perform their seasonal agricultural labor and pay the New Mexico minimum wage, which is now $7.50 per hour.  An abundance of farm laborers reside in the El Paso, Texas area.

C.  WKI's sole business purpose was to import Mexican agricultural laborers under the federal H2A program.

D.   Beginning in 2010, Campos visited mayors throughout the Mexican state of Chihuahua and compiled a list of some two thousand Mexican nationals who agreed to be drug-tested prior to traveling to the U.S. for H2A work.

E.  In the summer and fall of 2011, Campos approached Southern New Mexico growers seeking "guinea pigs" who were willing to demonstrate that Mexican H2A labor could serve the region's labor needs.

F.  Ronald Franzoy owns and manages Former Defendant RJF Farms, Inc.

G.  Campos and Ronald Franzoy discussed Campos and WKI's plan to import Mexican H2A workers many times, a plan that Ronald Franzoy enthusiastically supported.  Ronald Franzoy sought Mexican seasonal workers because he considered U.S. workers unreliable and unstable, and he saw not only how diligent and productive Mexican workers were, but also how

they were pleased to receive minimum wage.

H.  Campos prepared a one-page form "Agreement of Outsourcing Support" (AOS) that it signed with Southern New Mexico growers to meet the requirements of 20 C.F.R. § 655.132.

I.  Ronald Franzoy signed the AOS on September 22, 2011 on behalf of RJF Farms, Inc.

J.  Dino Cervantes signed the form AOS on September 10, 2011, and did so on behalf of Cervantes Agribusiness or both.

K.  At all relevant times, Cervantes Agribusiness had access to all U.S. seasonal workers that they needed through Jesus Maldonado, a licensed farm labor contractor who has supplied all seasonal labor needs to Dino Cervantes's satisfaction for forty years.

L.  At all relevant times, Defendants WKI and Campos had:
(a) no experience whatsoever in supplying H2A or any other type of farm labor to anyone;
(b) no assets or any kind of tools needed for farm work (buckets, gloves, clippers, etc.);
(c) no money paid from any person for the work on the H2A application; and
(d) no knowledge of farming or farmworker supervision.

M.  The only hourly wage that any of the farmers paid for seasonal labor was the New Mexico minimum wage of $7.50 per hour, and not more.

N.  The farmers never agreed to pay the adverse effect wage rate of $9.71 per hour to the H2A workers to be supplied by Defendants WKI and Campos.

O.  On September 29, 2011, Campos used the AOS signed by various farmers to petition for H2A workers who would perform labor at "fixed-site employers."

P.  To petition for these H2A workers, Campos swore under penalty of perjury that no qualifications or experience would be necessary to be hired for these jobs, all willing U.S. workers would be hired for the jobs prior to hiring any Mexican workers, and the pay to all U.S. and Mexican workers would be the AEWR of $9.71 per hour.  These promises were required by federal law to apply for H2A workers.

Q.  DOL partially certified the H2A application on November 14, 2011 and ordered Campos to cooperate with TWC in continuing to attempt to recruit U.S. workers for the job as stated on its application.

R.  Plaintiffs are citizens or lawful permanent residents of the United States.  Plaintiffs have worked as seasonal farm laborers for decades, customarily earning near the New Mexico minimum wage of $7.50 per hour.

S.  Plaintiffs considered earning the AEWR of $9.71 per hour to be highly desirable pay, particularly for November to March, a season when work is often scarce.

T.  Campos hired each Plaintiff on the following terms: no qualifications required, pay at the AEWR for New Mexico of $9.71 per hour, 35 hours per week, work between November 28, 2011 and March 9, 2012, and free housing and transportation to the worksite each day.

U.  Regardless of what Campos represented to DOL, he intended to provide work only to those persons who he considered the "best" workers, be they Mexican or U.S. workers.

V.  Between November 14 and 22, 2011, Campos attempted to deter U.S. workers from accepting the jobs—even though DOL and TWC warned him not to do so.  DOL and TWC repeatedly warned Campos that he must hire all U.S. workers who applied prior to accessing H2A visas for Mexican workers.

W.  Defendants had no prospective jobs available to workers other than those referenced in its H2A application.

X.  On November 22, 2011, eleven days after writing that the labor shortage was an emergency, Campos wrote to DOL falsely claiming that a drought required him to cancel the H2A application.

Y.  In 2011, Dino Cervantes hired replacement workers to actually perform the work covered by the AOS that he had signed.  Dino Cervantes's labor needs and labor supply did not change between 2010 and 2012.  The farmers actually paid its U.S. seasonal laborers hourly minimum wage of $7.50 per hour during 2011 and 2012.

Z.  Campos never provided any work to Plaintiffs during the period for which Plaintiffs were hired pursuant to the terms of the H2A contract.

2.      Defendants' Contentions:

**Jaime Campos:**

Even doe it was the first time doing business as Farm Labor Contractor, I have a strong Background of more than 25 years working in Human Resources and a BBA. All the process to request the Federal Department of Labor was done by professionals in the Law Firm in El Paso Texas, Scott and Hulse. From beginning to end all was done and approved by de Federal DOL. WKI nor I gain any profit from the farmers or anyone else. The work simply never got into effect due to Acts of God and the impossibility for contract.

WKI wanted to start a business legally and with good working practices. In fact, as a result WKI and I were successful by doing business in the State of Georgia and paying all H2A and Domestic workers the prevailing wage mandated by the Federal Department of Labor.

Plaintiff´s representation is misleading and wrongly advising them, and have no bases for their assumptions, as no contract or work happened.


## V.  APPLICABLE LAW

A.      Do the parties agree which law controls the action?

        _____ Yes  _____ No

If yes, identify the applicable law:  **New Mexico Law for State Claims and Federal Law for Federal Claims.**

## VI.  CONTESTED ISSUES OF LAW

Identify the specific issues of law which are contested.

        1.      Plaintiffs

                **Plaintiffs are not aware of any contested issues of law at this time.**

        2.      Defendant

                **Jaime Campos:**

                **Defendant is not aware of any contested issues of law at this time.**

## VII.  MOTIONS

A.      Pending Motions (indicate the date filed):

        1.      Plaintiffs:      **None**

        2.      Defendants:

        **Jaime Campos, *pro se*:**

        I did nothing to violate any federal statutory law or the AWPA; all process for H2A was done correctly, timely and with the best intentions to supply legal workers, domestic and foreign.

The Law Firm Scott & Hulse did what it takes to comply, even when WKI was unable to pay in full for their services.

Absolutely no fraud or breach of contract as we let professional lawyers manage the process at all times.

Finally Plaintiffs had a duty to mitigate any damages.

    3.     Other Party:

B.     Motions which may be filed:

    1.     Plaintiffs:    **Motions in Limine**
                                **Motion for Remote Appearance of Witnesses (Rule 43(a))**
                                **Motion to Excuse Attendance At Trial**
                                **Motion for Default Judgment**
    2.     Defendants

        **Jaime Campos, *pro se*: Motions in Limine**

    3.     Other Party

Briefing must be complete and filed with the Court by the date listed on the Court's

Scheduling Order [Doc. 270].

## VIII.  DISCOVERY

A.     Has discovery been completed?  __X___ Yes  _____ No

     If no, discovery terminates on _____.

B.     Are there any discovery matters of which the Court should be aware?

     None for Plaintiffs.

     Jaime Campos, *pro se*: None for Defendant

## IX.  ANTICIPATED WITNESSES

Each party is under a continuing duty to supplement this list and the description of

anticipated testimony.  This does not, however, apply to a rebuttal witness.  Indicate if the

witness will testify in person or by deposition and include a brief description of the anticipated

testimony.  If the testimony is by deposition, identify the deposition by page number and line

number.  A witness who has not been identified and whose testimony has not been disclosed may

not testify at trial unless good cause is shown.  No witnesses except rebuttal witnesses, whose

testimony cannot be anticipated, will be permitted to testify unless the name of the witness is

furnished to the Court and opposing counsel no later than thirty (30) days prior to the time set for

trial.  Any exceptions thereto must be upon order of the Court for good cause shown.

A.      Plaintiff's Witnesses:

      1.      Plaintiff will call or have available at trial the following witnesses:

      a.   ESTEBAN ALFARO-HUITRON.   Plaintiff will testify in person regarding offer, acceptance, and breach of employment contract and damages, including facts described in ECF No. 206.

      b.   JAIME CAMPOS.  Defendant will testify in person regarding how he formed and operated Defendant WorKonnection International Outsourcing Solutions, Inc., including how he contracted with farmers including the Franzoy brothers and Defendant CEI/CAB, how he offered employment to U.S. workers, and how and why he declined to provide employment on the terms that he promised to Plaintiffs, including facts described in ECF No. 206.

      c.   MARTY D. FRANZOY.  Manager of former Defendant Skyline Produce will testify in person regarding his experience with Defendants Jaime Campos and WKI, including facts described in ECF No. 206.  Deposition page and line numbers will be designated prior to the time required by the Court's order in ECF No. 197-1 at 2.

      d.   RONNIE J. FRANZOY.  Manager of former Defendant RJF Farms, Inc. will testify in person regarding his experience with Defendants Jaime Campos and WKI and his experience with agricultural labor in Southern New Mexico, including facts described in ECF No. 206. Deposition page and line numbers will be designated prior to the time required by the Court's order in ECF No. 197-1 at 2.

      e.   MARIO GALVAN.  Employee of Texas Workforce Solutions will testify by deposition regarding promises WKI and Jaime Campos made to Plaintiffs in the Rio Grande Valley and how Plaintiffs accepted the contracts at issue in this lawsuit, including facts described in ECF No. 206.

g.   ELEAZAR GARCIA-MATA.   Plaintiff will testify in person regarding offer, acceptance, and breach of employment contract and damages, including facts described in ECF No. 206.

h.   JOSE ANTONIO GARCIA-MATA.   Plaintiff will testify in person regarding offer, acceptance, and breach of employment contract and damages, including facts described in ECF No. 206.

i.   JUAN GUZMAN.   Plaintiff will testify in person regarding offer, acceptance, and breach of employment contract and damages, including facts described in ECF No. 206.

j.   RAUL JASSO-CERDA.   Plaintiff will testify in person regarding offer, acceptance, and breach of employment contract and damages, including facts described in ECF No. 206.

k.   RODRIGO JACQUEZ.   Former employee of Texas Workforce Solutions of the Upper Rio Grande in El Paso, Texas will testify in person regarding how he was present at meetings where Jaime Campos described job offers and how he recorded his observations of the meetings in memoranda, including facts described in ECF No. 206.

l.   BARBARA LUSINGER.   Texas Workforce Commission (TWC) employee will testify by deposition regarding Texas agency's experience with Defendants Campos and WKI, unusual nature of an H2A application for agricultural labor in Southern New Mexico, and Plaintiffs' complaints to TWC, including facts described in ECF No. 206.  Deposition page and line numbers will be designated prior to the time required by the Court's order in ECF No. 197-1 at 2.

m.   JESUS MALDONADO.   CAB's farm labor contractor will testify in person concerning CAB's longstanding labor practices, including facts described in ECF No. 206.

n.   CARLOS MARENTES.   Executive Director of farmworker center in El Paso, Texas will testify in person regarding meetings held between WKI and Plaintiffs at the center, why the center exists, and his decades of experience with job opportunities available to farm laborers who are recruited at his center to work in Southern New Mexico, including availability of U.S. workers and pay rate they are offered, including facts described in ECF No. 206.

o.   ENRIQUE ROJAS-TORRES.   Plaintiff will testify in person regarding offer, acceptance, and breach of employment contract and damages, including facts described in ECF No. 206.

p.   LAZARO ROJAS-TORRES.   Plaintiff will testify in person regarding offer, acceptance, and breach of employment contract and damages, including facts described in ECF No. 206.

q.   TRINIDAD SANTOYO-GARCIA.  Plaintiff will testify in person regarding offer, acceptance, and breach of employment contract and damages, including facts described in ECF No. 206.

r.   PEDRO TAMEZ.   Deceased Plaintiff may testify by deposition regarding offer, acceptance, and breach of employment contract and damages, including facts described in ECF No. 206.  Deposition page and line numbers will be designated prior to the time required by the Court's Scheduling Order.

3.      Plaintiff may call the following witnesses:

a.   RAFAEL AMARO.  Former recruiter for Defendant WKI regarding recruiting practices and objectives.

b.  FRANCISCO CERDA.  TWC employee regarding communications with WKI and Jaime Campos.

c.  RAUL CORTES.  Former recruiter for Defendant WKI regarding recruiting practices and objectives.

d.  A family member of deceased Plaintiff Pedro Tamez may testify regarding the fact of his death.

B.   Defendants' Witnesses:

**Jaime Campos,** *pro se***: None at this time.**


## X.  TRIAL PREPARATION

A.   Exhibits.

The parties shall jointly file one list of stipulated exhibits and shall separately file lists of contested exhibits no later than February 1, 2019. They shall also submit two physical copies of marked exhibits to my chambers by the next business day. The first copy shall include exhibits that the parties stipulate to be admissible, and shall be labeled consecutively.

The second copy shall include exhibits, the admissibility of which are contested, and shall be labeled consecutively beginning with the next sequential number after the final

stipulated exhibit designation. For instance, if there are 50 stipulated exhibits, 20 contested plaintiff's exhibits, and 20 contested defendant's exhibits, the first notebook shall contain stipulated exhibits numbered 1 to 50. The second notebook shall contain plaintiff's contested exhibits numbered 51 through 70 and defendant's contested exhibits numbered 71 through 90. To allow sufficient time for a party to decide whether to contest the admission of exhibits, each party must send a list of their proposed exhibits to the opposing party no later than January 25, 2019.

B.      Witness Lists.

The parties shall file their witness lists, which must disclose both witnesses that the parties "will call" and witnesses that they "may call" at trial. Witness lists are due by January 25, 2019. Any objections to a witness named by the opposing party must be filed by February 1, 2019.

C.      Consent to Bench Trial.

The parties have conferred and will consent to a bench trial.  Therefore, they will have no need for voir dire or jury instructions or verdict forms.

D.      Submission for Bench Trials.

1.      The parties must submit one mutually approved set of proposed findings of fact and conclusions of law no later than 3 calendar days before trial.  For those findings of fact and conclusions of law the parties were unable to agree upon, each party must submit its own proposed findings of fact and conclusions of law at the same time as submission of the mutually approved set.

2.      If requested, submit the findings of fact and conclusions of law in a format compatible with MS Word.  Please refer to the procedures, available on our web site, for electronically submitting proposed text.

## XI. OTHER MATTERS

A.      Settlement Possibilities.

1.      The possibility of settlement in this case is considered:

  __X__ Poor _____ Fair _____ Good _____ Excellent _____ Unknown

2.      Do the parties have a settlement conference set with the assigned Magistrate Judge?

_____ Yes __X_____ No If yes, when? _____

If a settlement conference has already been held, indicate approximate date:

__September 4, 2015_____

Would a follow-up settlement conference be beneficial? _____ Yes __X__No

**Plaintiffs' Position: Plaintiffs and Mr. Campos have been conferring about reasonable efforts to settle this matter.  They have been transparent about their respective settlement positions and do not believe that mediation will be worth the effort it will take to have all remaining plaintiffs travel to Las Cruces.  They will continue to work diligently to resolve this matter prior to trial without a settlement conference.**

**Jaime Campos, *pro se*: Agrees with above statement**

3.      Does either party wish to explore any alternatives for dispute resolution such as mediation or a summary jury trial?

If yes, please identify: _____

If no, explain why not: _____

**Plaintiffs' Position:   Plaintiffs will continue to work toward dispute resolution prior to trial.**

**Jaime Campos,** *pro se***: Defendant will continue to work toward dispute resolution prior to trial.**

B.      Length of Trial and Trial Setting.

1.      This action is a          _X_____ Bench Trial __ _____ Jury Trial          _____ Both

2.      The case is set for trial on <u>March 5, 2019</u>.  If there is no setting, the parties estimate they will be ready for trial by __n/a__.

3.      The estimated length of trial is <u>three days (Plaintiffs)</u> day(s).

## XII. EXCEPTIONS

## XIII. MODIFICATIONS-INTERPRETATION

The Pretrial Order when entered will control the course of trial and may only be amended *sua sponte* by the Court or by consent of the parties and Court approval.  The pleadings will be deemed merged herein.

The foregoing proposed Pretrial Order (prior to execution by the Court) is hereby approved this _____ day of _____, 20___.


                                        */s/ Christopher Benoit*
                                        Jerome Wesevich
                                        N.M. Bar No. 20389
                                        Email: jwesevich@trla.org
                                        Christopher Benoit
                                        N.M. Bar No. 150497
                                        Email: cbenoit@trla.org
                                        ATTORNEYS FOR PLAINTIFFS

                                        /s/ Jaime Campos
                                        Jaime Campos
                                        *Pro se*

Dated: _____


_____
HON. GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE